| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Gerard T. Cicero, Esq.<br>dmolton@brownrudnick.com<br>gcicero@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Stephen D. Palley, Esq. (*pro hac vice* pending)<br>spalley@brownrudnick.com<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005<br>Tel: (202) 536-1766<br>Fax: (617) 289-0766<br><br>and<br><br>Michael W. Reining, Esq. (*pro hac vice* pending)<br>mreining@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Counsel for James Drury and Paul Pretlove, as the*<br>*Appointed Receivers of Hector DAO* | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 230-2095<br><br>*Local Counsel for James Drury and Paul Pretlove, as the*<br>*Appointed Receivers of Hector DAO* |
| In re:<br><br>HECTOR DAO,<br>                              Debtor. | Chapter 15<br>Case No.  24-16067 |

## DECLARATION OF JAMES DRURY IN SUPPORT OF (I) VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF

I, James Drury, declare as follows:

1.      I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion").

2.      I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of those books and records of Hector DAO that have been obtained by me.

3.      I am a Director at Interpath Advisory, a trading name for Interpath (BVI) Limited ("Interpath"), a financial advisory and restructuring services firm, in its Tortola, British Virgin Islands office.

4.      I have a broad range of experience, including managing a number of high profile multi-jurisdictional engagements including complex insolvency, restructuring, and advisory-focused engagements in the United Kingdom, Cayman Islands, and British Virgin Islands.  In particular, I have extensive expertise and experience advising clients relating to cryptocurrencies, NFTs, and blockchain technology.  I have also assisted in the recovery of digital assets, often in circumstances involving fraud or hacking activity, or where assets are held by exchanges.  Before joining Interpath, I served as a Director at Kalo, a Deal Advisory Principal at KPMG, a Senior Manager at Grant Thornton, and an Insolvency Manager at Begbies Traynor Group.  I earned a Certificate of Proficiency in Insolvency (CPI) from BPP University Law School in 2006 and a Joint Insolvency Examinations Board (JIEB) qualification from BPP Law School in 2009.  I am a licensed and regulated Insolvency Practitioner by the British Virgin Islands Financial Services Commission.

**A.      Hector DAO Generally.**

5.      Formed in October 2021, Hector DAO was a group of crypto asset holders using the Hector Network, a set of smart contracts deployed on the Fantom blockchain that were programmed to facilitate financial transactions with crypto assets.  The acronym "DAO" stands for "decentralized autonomous organization."

6.      Hector DAO's blockchain-based governance system was created by deploying a DAO smart contract to govern the organization's voting mechanism.  One could become a Hector DAO participant (or "HEC Tokenholder") by acquiring crypto asset tokens known as "HEC"[1] that were generated by Hector DAO and held by participants in their wallets to evidence their voting units.  HEC was acquired by transferring other types of crypto assets to the Hector DAO treasury wallet (the "Treasury Wallet", and the crypto assets held therein, the "Treasury Assets") in exchange for the issue of HEC.  Alternatively, one could acquire HEC from existing HEC Tokenholders on the secondary market.

7.      HEC Tokenholders would submit proposals for Hector DAO activities – such as investing Treasury Assets, changing Hector Network's governing protocol, funding development projects, and organizing community events – and such proposals would be subject to voting periods and approval thresholds, with HEC Tokenholders casting their votes, weighed on a *pro rata* basis, to approve or reject proposals.  Between November 2021 and May 2023, Hector DAO made millions of dollars' worth of investments of Treasury Assets in accordance with the votes of HEC Tokenholders, including investing in SAFTs (simple agreements for future tokens), marketing partnerships, tokens, and other crypto projects.

8.      Hector DAO's project management team, an informal group that has changed over time, consists of individuals who provided services to Hector DAO and effectuated proposals approved by HEC Tokenholders.  Beginning in early 2022, five individuals known as "Core 5" managed Hector DAO and the Hector Network.  Core 5 then invited select representatives from the wider development team to form the "Future Group," which provided input on management

---

[1] Whilst HEC is the governance token, tokenholders could be a participant of Hector DAO by holding various derivatives or combinations of the HEC token, including but not limited to FNFT, HEC-TOR, sHEC, wHEC, and swHEC.  Each has an aggregated value back to HEC which is used for voting.

decisions.  The Future Group grew over time and turned into the "Steering Committee."  Core 5 in large part delegated its responsibilities to the Steering Committee.  The Steering Committee appointed and dismissed its members via Steering Committee votes.

9.      On May 5, 2022, Core 5 formed Hector Enterprise Inc. for the purpose of serving Hector DAO as an intermediary for off-blockchain transactions, such as contracting with service providers, executing investment contracts, and onboarding with exchanges.  All cost-incurring activities of Hector DAO were "routed" through Hector Enterprise Inc.  At all times since Hector Enterprise Inc.'s incorporation in the British Virgin Islands pursuant to the BVI Business Companies Act on May 5, 2022, its corporate director has been DLT Solutions Limited, 2nd Floor, Charles Court Building, 189 Main Street, Tortola, British Virgin Islands.

**B.      Depletion of Treasury Assets and HEC Tokenholders' Vote to Liquidate.**

10.     In addition to the decline in value of certain of the investments described above, Hector DAO suffered losses to its Treasury Wallet resulting from:

    a.   the general decline in the value of cryptocurrency in 2022 and 2023;

    b.   internal software development costs including blockchain infrastructure projects and contractor remuneration; and

    c.   several one-off loss of value incidents caused by external factors, such as:

        i.    the collapse of Multichain;

        ii.   the hack of the Hector bridge; and

        iii.  the collapse of UST (Terra Network) in May 2022, resulting in a loss of $16.4 million in Treasury Assets.

11.     In sum, the losses suffered by Hector DAO were caused by a combination of crypto market volatility, vulnerability of certain smart contracts it invested in or interacted with to cyber

hacks, and the challenges of investing in blockchain technology projects. The Receivers are also aware of allegations that Treasury Assets were mismanaged and that the former managers of the Treasury Assets may have been involved in the hacks, and the Receivers are investigating these matters.

12. On July 15, 2023, the HEC Tokenholders were presented with proposal HIP 42 to either (a) liquidate the Hector Network and redeem the HEC token against the Treasury Assets, or (b) migrate Hector Network and the HEC token to a different chain (to be determined) under a different brand. Voting under proposal HIP 42 ended on July 17, 2023, with HEC Tokenholders overwhelmingly (more than 83%) voting in favor of option (a), liquidation.

13. Following the vote on proposal HIP 42, the Steering Committee appointed a liquidation committee to oversee and run the liquidation process (the "Liquidation Committee") and thereafter the Steering Committee ceased to exist. Certain members of the Liquidation Committee have indemnities included in their service agreement that provide that Hector DAO will indemnify such individuals against all costs, damages, claims, expenses and other liabilities that may be incurred by them: (i) in the reasonable conduct of the liquidation of Hector DAO; (ii) in the reasonable exercise of any function, authority, discretion or right vested in them under the liquidation plan; (iii) in enforcing the provisions of the services agreement; or (iv) on the basis of any actions or inaction of Hector DAO or individuals involved with Hector DAO prior to the individual contracting with Hector DAO. Hector DAO also provided indemnities to certain contractors.

**C.     Security Concerns and the Initiation of the Receivership.**

14. Upon its appointment, the Liquidation Committee delegated responsibility for developing a distribution smart contract and interfacing application ("User Interface") to distribute

the remaining Treasury Assets consistent with the vote on proposal HIP 42.  Responsibility was delegated to the development team, with the assistance of outside auditors to check and verify the security of the architecture, the smart contract, and the User Interface.  Development and testing began in July 2023.

15.     On January 15, 2024, when the Liquidation Committee attempted to distribute the Treasury Assets by transferring treasury funds to the distribution smart contract for onward distribution to HEC Tokenholders, the smart contract was immediately drained due to an exploitation of a software vulnerability, resulting in the theft of assets worth $2.7 million.

16.     Given the security concerns arising from the exploit of the distribution contract, the Liquidation Committee was unable to distribute treasury funds directly to HEC Tokenholders and accordingly sought to appoint receivers to perform this function.

17.     On February 16, 2024, Hector Enterprise Inc., with the cooperation of members of the Liquidation Committee, filed an application with the High Court of the Virgin Islands (Commercial Division), Eastern Caribbean Supreme Court (the "BVI Court") to appoint James Drury and Paul Prelove of Interpath (the "Receivers") as joint and several receivers over the assets and undertakings of Hector DAO, thus initiating Case Number BVIHCOM 2024/0072 (the "BVI Receivership Proceeding").

18.     On February 19, 2024, the BVI Court made an order appointing the Receivers as joint and several interim receivers over the assets of Hector DAO, including the Treasury Assets, for the purpose of collecting and preserving such assets as part of the wind-down of Hector DAO (the "Interim Receivership Order").  The Interim Receivership Order was made on an ex parte basis and therefore required a return date within 28 days.  Since the entry of the Interim Receivership Order, the Receivers have received correspondence for Hector DAO at their office

(Interpath (BVI) Limited, PO Box 4571, LM Business Centre, Fish Lock Road, Road Town, Tortola, British Virgin Islands, VG1110).

19.     On March 12, 2024, the BVI Court made an order (the "Continuation Order") continuing the relief granted in the Interim Receivership Order and granting certain additional relief, including (i) permitting the Receivers to take legal advice on and pursue an application for chapter 15 recognition under the United States Bankruptcy Code, and (ii) permitting the Receivers to formulate a detailed plan for the distribution of the Treasury Assets to HEC Tokenholders.

20.     On April 9, 2024, the BVI Court made an order (the "Final Receivership Order")[2] appointing the Receivers as joint and several receivers, on a full and final basis, over the Treasury Assets, with immediate effect, for the purpose of collecting in and preserving such assets, winding down the operations of Hector DAO and distributing the Treasury Assets, firstly to admitted creditors and then amongst the HEC Tokenholders who are eligible for a redemption in proportion with their token holding, as part of a collective liquidation process. *See* Final Receivership Order at 2, 4-5.  Pursuant to the Final Receivership Order the Receivers were granted additional powers for the purpose of planning and giving effect to a distribution of Treasury Assets amongst eligible HEC Tokenholders, rather than the preservatory role that the Receivers held in accordance with their interim appointment. *See id*. at 7.

**D.     The Receivers' Powers and Responsibilities.**

21.     The Final Receivership Order granted the Receivers the following powers, among others:

- to take and retain possession and/or control of the Treasury Wallet;

---

[2] A true and correct copy of the Final Receivership Order is attached as Exhibit A to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.*

- subject to procedures for establishing a distribution plan, to take, retain possession of, collect, transfer, hold, preserve and/or distribute the Treasury Assets to all HEC Tokenholders eligible for a redemption in proportion with their token holding;

- to take and retain possession of all documents, information, books and records (whether electronic or otherwise) relating to the undertaking and affairs of Hector DAO and its assets including the Treasury Wallet and the Treasury Assets;

- to investigate any such, and all antecedent transactions effecting Hector DAO, not limited to, the exploit and hack of the distribution smart contract on January 15, 2024;

- to execute such documents, in the name of Hector DAO, as may be required to enable them to carry out their duties under the Final Receivership Order;

- to exercise any rights that are exercisable by Hector DAO or those acting on its behalf, including employees and/or contractors engaged by Hector Enterprise Inc.;

- to enter into any transaction, including any blockchain transaction, on behalf of Hector DAO;

- to create, use, alter or terminate any smart contract, algorithm or code on behalf of Hector DAO;

- to instruct legal representatives or other professionals to act for the Receivers and/or for Hector DAO in any jurisdiction to assist them in the performance of their duties and for that purpose to execute in the name and on behalf of Hector DAO all necessary documents, including powers of attorney;

- to take legal advice on and to bring or defend any action or other legal proceedings in the courts in BVI or any other country in order to recognize the BVI Receivership Proceeding and the powers granted in accordance with the Final Receivership Order, including by way of chapter 15 recognition in the United States, or to otherwise prevent interference with the receivership process;

- to use any agents, tools, software or otherwise for the purpose of taking custody of, transferring and/or distributing the Treasury Assets;

- to adjudicate claims by creditors of Hector DAO and/or of Hector Enterprise Inc. and to use Treasury Assets to pay in full claims admitted by the Receivers, in priority to the distribution of the remaining Treasury Assets amongst eligible HEC Tokenholders; and

- except as otherwise provided for in the Final Receivership Order, to do all such acts or things as the Receivers may in their discretion consider necessary for carrying out and giving effect to their appointment.

*See* Final Receivership Order at 3-5.

22.     As the court-appointed receivers in the BVI Receivership Proceeding, the Receivers therefore have control over the Treasury Assets and the management of Hector DAO pursuant to the Final Receivership Order.  *See* Final Receivership Order at 3-5.

23.     The BVI Court specifically authorized the Receivers, as court officers and licensed insolvency practitioners, to exercise their powers both in the British Virgin Islands and abroad. *See* Final Receivership Order at 4-5.

24.     The Final Receivership Order also authorized the Receivers to, among other things, take and retain possession and/or control of the Treasury Wallet, take and retain possession of all documents, information, books and records relating to Hector DAO, investigate antecedent transactions effecting Hector DAO, exercise any rights exercisable by Hector DAO, enter into any transaction on behalf of Hector DAO, bring and defend actions in order to recognize the BVI Receivership Proceeding and the Receivers' powers or to otherwise prevent interference with the receivership process, and do other acts that are in the Receivers' discretion necessary for carrying out and giving effect to their appointment.  *See* Final Receivership Order at 3-5.

25.     The Final Receivership Order provides that the Receivers shall formulate, prepare, and submit to the BVI Court a plan for the distribution of the Treasury Assets to eligible HEC Tokenholders, which shall be subject to the BVI Court's approval before any final distribution is made.  *See* Final Receivership Order at 7.  The Final Receivership Order requires that this plan for distribution must, among other things, consider the rights and obligations of all HEC Tokenholders and provide for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders.  *See id*.

26.     As the receivers appointed by the BVI Court and who have the power "to do all such acts or things as [they] may in their discretion consider necessary for carrying out and giving

9

effect to their appointment," the Receivers have the authority to take the actions necessary to distribute the Treasury Assets and wind down Hector DAO "as part of a collective liquidation process." *See* Final Receivership Order at 2, 5.

27.     The BVI Court oversees the BVI Receivership Proceeding. *See* Final Receivership Order at 1, 6-7. As court-appointed officers, and regulated professionals, the Receivers owe duties to and are answerable to the BVI Court. The Receivers are required to report to the BVI Court at least every three months to update it on the progress of the Receivership. *See id*. To date, the Receivers have complied with all of the BVI Court's requirements and have made best efforts to ensure the BVI Court is apprised of all pertinent matters.

28.     In addition to the Receivers' responsibilities with respect to formulating a plan for distribution of the Treasury Assets to eligible HEC Tokenholders, as discussed above, the Receivers are also responsible for administering claims by creditors in the BVI Receivership Proceeding. *See* Final Receivership Order at 4-5.

**E.      The Receivers' Notices to Parties in Interest.**

29.     On February 23, 2024, the Receivers provided notice of the BVI Receivership Proceeding and the Receivers' appointment as joint and several interim receivers to (i) Sparring Legal, the former legal advisors to Hector DAO; (ii) Hector Enterprise Inc., through its director and Registered Agent, DLT Solutions Limited; and (iii) three of the four (former) multi signers of the Treasury Wallet (i.e., the group that had the ability to collectively authorize transactions through the Treasury Wallet) – the BVI Court permitted the Receivers to dispense with serving the fourth multi signer.

30.      Hector Enterprise Inc. is the only known creditor of Hector DAO.   Neither the

Receivers nor Hector Enterprise Inc. (Hector DAO's intermediary for off-blockchain transactions)

are aware of any other creditors of Hector DAO.

31.      The Receivers also published notices to HEC Tokenholders through online sources

and social channels.   On February 19, 2024, the Receivers posted a notice of their interim

appointment on Hector DAO's website and Telegram and Discord Channels.   On February 21,

2024, the Receivers posted a further communication on Hector DAO's Telegram and Discord

channels.  On February 29, 2024, the Receivers collated a list of questions sent directly or observed

through Discord and published a Frequently Asked Questions (FAQ) documents to the HEC

Tokenholders to provide further details on the Receivers' role and their actions to date.   The

Receivers established a dedicated email address for HEC Tokenholders to correspond with them

(Hector@interpathadvisory.com) and created a Telegram contact address (@InterpathBVI).   The

Receivers have placed significant importance on engaging with the Hector DAO community by

providing regular updates to provide clarity and establish trust within the community, as well as

keeping the BVI Court updated with the progress of the receivership, having filed four reports.  By

informing the community of the Receivers' interim appointment very shortly after it was made,

this gave an opportunity to anyone affected by the appointment to engage with the proceedings.

Specifically, anyone opposed to the BVI Receivership Proceeding could have opposed the

continuation of the interim appointment at the March 2024 hearing.   However, there has at no stage

been any intervention in the BVI Receivership Proceeding by any HEC Tokenholders or third

parties and no objection to the appointment of the Receivers either on an interim or full and final

basis.

32.     In sum, the Receivers have provided notice of the BVI Receivership Proceeding and the Receivers' appointment as joint and several receivers to all known creditors of Hector DAO and to the HEC Tokenholders.

**F.     Initiation of the Newton Proceeding.**

33.     On February 7, 2024, Newton AC/DC Fund L.P. ("Newton"), an HEC Tokenholder, filed a complaint (the "Newton Complaint" and the proceeding the "Newton Proceeding") in U.S. District Court for the District of New Jersey, Trenton Division, Judge Robert Kirsch presiding (the "NJ District Court"), against Hector DAO, Farooq Hassan (a former member of the Liquidation Committee), and John Doe (an unknown person who holds an account at the Binance Exchange), alleging, among other things, that Hector DAO failed to fulfil its obligations to HEC Tokenholders and misapplied and/or wasted the Treasury Assets.[3]  The Newton Complaint alleges breach of contract, unregistered offer and sale of securities under sections 5 and 12(a)(1) of the Securities Act of 1933, and breach of fiduciary duty against all named defendants, and conversion against all defendants.

34.     Along with the Newton Complaint, Newton filed a motion (the "TRO Motion") for (i) an *ex parte* temporary restraining order, and (ii) order to show cause why a preliminary injunction should not issue to prohibit the transfer of and freeze the contents of the Treasury Wallet, as well as (iii) an order permitting Newton to serve defendants Hector DAO and John Doe through alternative service.[4]  On February 13, 2024, the NJ District Court denied the motion for a temporary restraining order on the papers but reserved decision on Newton's motions for an order

---

[3] *See* Verified Complaint, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 7, 2024) (Dkt. No. 1).

[4] *See* Motion for Ex Parte Temporary Restraining Order and Order to Show Cause, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 7, 2024) (Dkt. No. 2).

to show cause and for alternative service, and scheduled a telephone conference for February 20, 2024.[5]

35.    On February 19, 2024, the Receivers' U.S. counsel, Brown Rudnick, emailed Newton's counsel and filed in the Newton Proceeding a letter (i) providing notice of the BVI Receivership Proceeding and the Receivers' broad powers to take possession and control of the very assets at issue in the Newton Proceeding and to secure those assets for the benefit of all of Hector DAO's claimants including Newton, and (ii) advising that the BVI Receivership Proceeding makes Newton's request for injunctive relief entirely moot and the Newton Proceeding a distraction which should be dismissed.[6]   On February 22, 2024, the Receivers' U.S. counsel, Brown Rudnick, filed in the Newton Proceeding a copy of the Interim Receivership Order, redacted to remove individuals' names to protect their safety and security, given that abuse and threats had been directed to members of the Liquidation Committee.[7]

36.    On February 20, 2024, the NJ District Court held a telephone conference on the order to show cause, with counsel for Newton and the Receivers participating.[8]   The NJ District Court instructed Newton's counsel to advise the NJ District Court on the status of the matter after conferring with the Receivers' counsel.[9]   At a follow-up conference on March 7, 2024, with counsel for Newton and the Receivers participating, Newton's counsel advised the NJ District

---

[5] *See* Order [Denying Motion for Temporary Restraining Order], Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Feb. 13, 2024) (Dkt. No. 10).

[6] *See* Letter from David J. Molton, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 19, 2024) (Dkt. No. 11).

[7] *See* Letter from David J. Molton, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 22, 2024) (Dkt. No. 14).

[8] *See* Text Order, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Feb. 20, 2024) (Dkt. No. 13).

[9] *See* Text Order, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Mar. 7, 2024) (Dkt. No. 20).

Court that while it did not believe good cause existed to voluntarily dismiss the Newton Proceeding, it was no longer seeking preliminary injunctive relief.[10] The NJ District Court referred Newton's request for an order permitting alternative service to Magistrate Judge J. Brendan Day.[11]

37.    On April 24, 2024, Judge Day held a status conference and denied without prejudice Newton's motion to permit alternative service on defendants Hector DAO and John Doe; indicated that Newton may refile a motion for alternative service that shall include a supporting brief setting forth with specificity the relief Newton seeks and the applicable legal authority; granted Newton leave to subpoena Binance and/or other third parties for the limited purpose of seeking information related to John Doe in order to effectuate service; and extended Newton's time to effect service on all defendants to July 8, 2024.[12] .

38.    On May 3, 2024, Newton filed a new motion to permit alternative service on Hector DAO and John Doe, arguing that Newton should be permitted to serve Hector DAO through Farooq Hassan and, additionally, serve both Hector DAO and John Doe through issuance of an NFT to certain wallet addresses identified by Newton.[13] The motion will be decided on the papers by Judge Day.[14]

39.    The Newton Proceeding, which consists of litigation filed by a small number of HEC Tokenholders, threatens to interfere with the BVI Receivership Proceeding which is a court-driven collective process whereby regulated insolvency practitioners acting as independent

---

[10] *See id.*

[11] *See id.*

[12] *See* Text Order, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Apr. 25, 2024) (Dkt. No. 22).

[13] *See* Motion for Alternative Service, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed May 3, 2024) (Dkt. No. 25).

[14] *See* Text Order, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered May 6, 2024) (no Dkt. No.).

officers of the BVI Court are working to preserve and distribute the Treasury Assets to all eligible

HEC Tokenholders as part of a wind-down of Hector DAO.  The BVI Receivership Proceeding is

clearly and distinctly the most appropriate proceeding to oversee the liquidation and distribution

of Hector DAO's assets amongst HEC Tokenholders, particularly given that the Receivers are

under a duty to fairly adjudicate creditor claims (with creditors having the right to apply to the BVI

Court if they are aggrieved by any decision taken by the Receivers) and to provide for *pari passu*

and *pro rata* treatment of all eligible HEC Tokenholders.  I understand that granting the motion to

recognize the BVI Receivership Proceeding as a "foreign main proceeding" would stay, as against

Hector DAO, the Newton Proceeding and any other actions in the United States.

40.     The Newton Proceedings also names as a defendant Farooq Hassan, an individual

who formerly managed the Treasury Assets and administered the Hector DAO and whose services

contract with Hector Enterprise Inc., the legal entity through which Hector DAO contracted off-

chain, provides that Hector DAO will indemnify him against all costs, damages, claims, expenses

and other liabilities that may be incurred by him: (i) in the reasonable conduct of the liquidation

of Hector DAO; (ii) in the reasonable exercise of any function, authority, discretion or right vested

in him under the liquidation plan; (iii) in enforcing the provisions of the services agreement; or

(iv) on the basis of any actions or inaction of Hector DAO or individuals involved with Hector

DAO prior to his contracting with Hector DAO.  As such, the Receivers anticipate that claims

against the Treasury Assets could arise from the Newton Proceeding pursuant to such indemnity,

including as a result of the Newton Proceeding continuing (albeit the Receivers do not accept that

a claim under such an indemnity has recourse to the Treasury Assets).

41.     Since their appointment, the Receivers, through their U.S. counsel, have made

numerous efforts to encourage Newton to stay or dismiss the Newton Proceeding in deference to

15

the BVI Receivership Proceeding.  The Receivers have sought to assuage Newton's concerns by explaining the basis for and the purpose of the BVI Receivership Proceeding.  The remedies sought by Newton in the Newton Proceeding were initially predicated in part on assertions that the Treasury Assets were not secure and that there was a risk of dissipation.  This is no longer the case, and the Receivers have confirmed to Newton that the Receivers are both regulated insolvency practitioners who act as independent officers of the BVI Court and have full control of the Treasury Assets such that there is no risk of dissipation.  Not only do the Receivers have full control of the Treasury Assets, but they have full control of the networks, servers, and all documents relating to Hector DAO which will ensure that a process for dealing with the Treasury Assets will be completed in an informed and efficient manner.

42.     To date, the Receivers' efforts to obtain a consensual stay or dismissal of the Newton Proceeding has been unsuccessful, as Newton continues to request accommodations that that are unacceptable to the Receivers.  Continuation of the Newton Proceedings will interfere with and delay the distribution of the Treasury Assets as there may be future unquantified claims against the Treasury Assets.

**G.     Potential US Tokenholder Claims.**

43.     On 5 April 2024, a HEC Tokenholder based in the U.S. (the "US Tokenholder") wrote to the Receivers directly raising concerns with respect to the former management team's imposition of a rule, pursuant to HIP 42, whereby dealing with HEC tokens following the date on which it was decided to make that community proposal (frequently referred to as the "Snapshot Date") made such tokens ineligible for redemption.

16

44.     Subsequently, through additional communication, the US Tokenholder reiterated the above allegations against Hector DAO and the former management team.  In addition, the US Tokenholder also alleged that:

    a.   The HIP 42 voting process was invalid due to the requisite quorum not being met to validate the decision.  The US Tokenholder states that the lack of broad community participation undermines the legality of the HIP 42 snapshot and, by extension, all decisions deriving from it.

    b.   The US Tokenholder claims to have uncovered concerning evidence suggesting that certain members of the Hector DAO team have engaged in activities warranting criminal investigations but has not provided that evidence.

45.     Further, the US Tokenholder placed the Receivers on notice that should the above not be addressed, they will initiate legal proceedings in both the US and BVI.  In addition, the US Tokenholder has advised that information will be forwarded to the respective US tax authorities and the FBI for further action.  The US Tokenholder has also sought to write directly to the BVI Court to express their grievances.

46.     The Receivers have, in line with their position taken with all HEC Tokenholders, maintained open and transparent communication with the US Tokenholder.  In respect of the US Tokenholder's purported allegations, the Receivers have requested the US Tokenholder provide documentation to support their claims to allow the Receivers to investigate further. To date no supporting documentation has been provided. The US Tokenholder has attempted to give reasons for not being able to provide such documentation, but the Receivers do not consider the explanation to be credible.  The Receivers have significant doubts as to the jurisdiction of the claims made by

the US Tokenholder, based on on-chain data, and, therefore, have requested certain information, which is known to be easily accessible from centralized exchanges.

47.   The Receivers seek to prevent any claims or actions by the US Tokenholder in the United States from damaging Hector DAO or interfering with the BVI Receivership Proceeding.

**H.   Investigations.**

48.    The BVI Court granted the Receivers the power to investigate any such, and all antecedent transactions effecting Hector DAO, not limited to, the exploit and hack of the distribution smart contract on January 15, 2024 (the "January 2024 Hack").

49.   The Receivers, whilst working with the community, have traced transactions from the January 2024 Hack to a number of centralized exchanges ("CEX") and decentralized protocols. Accordingly, the Receivers wrote to these platforms seeking information held relating to various wallet addresses associated with the January 2024 Hack.  A number of these platforms are based or have operations within the U.S., including Binance, BitPay and OKX (a Crypto exchange platform headquartered in Seychelles with offices located across the US), where the Receivers have seen wallets funded or be recipients of funds emanating from the January 2024 Hack.

50.   Whilst the Receivers are in contact with the CEXs, to date, the Receivers have received limited responses from the various platforms, who are only able to provide limited information, on a voluntary basis, without court order.  The Receivers have also uncovered records owing to an individual with connections to the U.S., whom they strongly believe is the exploiter.

51.   The Receivers seek Chapter 15 recognition to assist in their investigations into the January 2024 Hack, specifically, with receiving the requested information from the platforms based within the U.S. by way of disclosure.

### I.    The Chapter 15 Case.

52.    By filing the Verified Petition and the Motion, I seek the assistance of the U.S. courts in my efforts to (i) obtain further documents and information relating to Hector DAO, including in connection with my investigation of antecedent transactions effecting Hector DAO such as the January 15, 2024 hack; (ii) locate and recover Hector DAO's assets; and (iii) preserve Hector DAO's assets, all in furtherance of my duties, as a joint and several receiver of Hector DAO, to liquidate Hector DAO's assets and repay its creditors according to their priorities.  I anticipate that the claims administration and distribution process will take place in the BVI as part of the BVI Receivership Proceeding and my liquidation of Hector DAO's assets.

53.    I have reviewed Exhibit A to the *Evidence of the Foreign Proceeding*.  The exhibit is a true and correct copy of the original document.

54.    The relief sought by the Motion is critical to my ability to preserve Hector DAO's assets in furtherance of my duties, as a joint and several receiver of Hector DAO, to liquidate Hector DAO's assets and repay its creditors as part of the collective liquidation process in the BVI Receivership Proceeding.  Without the requested relief, claimants would be permitted to litigate the Hector DAO Claims in other forums against Hector DAO and related parties, causing harm to Hector DAO and interfering with the BVI Receivership Proceeding.

55.    Absent an order that stays and/or enjoins the continuation or commencement of Hector DAO Claims against the Protected Parties, I believe that claimants will contend that the automatic stay only applies to Hector DAO and will continue prosecuting the Hector DAO Claims against Protected Parties outside the Chapter 15 Case, thereby effecting, interfering with, and prejudicing the BVI Receivership Proceeding and causing jeopardy to the Treasury Assets available for distribution to the HEC Tokenholders.

19

56.    The continuation or commencement of the Hector DAO Claims against the Protected Parties would irreparably harm the Debtor.  Hector DAO has indemnified certain members of the Liquidation Committee as well as certain contractors.  If these parties incur liabilities for Hector DAO Claims, they will likely seek to hold Hector DAO responsible for such liabilities pursuant to the indemnification agreements.

57.    In addition to the harms that liquidation of the Hector DAO Claims would cause to Hector DAO, I am concerned that litigation of the Hector DAO Claims against the Protected Parties outside the Chapter 15 Case will create a risk that Hector DAO's rights and interests will otherwise be prejudiced by those proceedings, such as causing prejudice to Hector DAO's rights and interests in any future proceedings against Hector DAO.

58.    Accordingly, the continued litigation (and potential liquidation) of Hector DAO Claims against the Protected Parties poses a serious threat to Hector DAO and the just and equitable administration of the BVI Receivership Proceeding under the supervision of the BVI Court.

59.    Given the risks posed to Hector DAO and its assets, absent relief prohibiting the prosecution of the Hector DAO Claims against the Protected Parties, the Receivers will need to divert significant resources towards ensuring that Hector DAO is not harmed or prejudiced those proceedings.

60.    Specifically, absent such relief, the Receivers will be required to divert Hector DAO's resources towards ensuring that Hector DAO's assets are protected, and its interests are not prejudiced through the Newton Proceeding and any other proceedings litigating the Hector DAO Claims against the Protected Parties.  Funds that otherwise could have gone towards the recoveries of creditors and HEC Tokenholders as part of the liquidation process would be diverted

towards the Hector DAO Claims through the legal costs that Hector DAO would necessarily incur if the Hector DAO Claims are not stayed.  Absent such relief, the Receivers will be required to divert their time and energy towards ensuring that Hector DAO's assets are protected and its interests are not prejudiced through litigation, and this in turn would require the Receivers to divert their time and energy away from their efforts to administer Hector DAO's collective liquidation process in the BVI Receivership Proceeding. Also absent such relief, there is a possibility that judgments will be entered against the Protected Parties, thus turning them into additional creditor claimants in the BVI Receivership Proceeding by virtue of actual or alleged indemnification obligations.

61.    The Receivers thus require the relief as set forth in the Proposed Order, all in accordance with Section 1521(a)(1) of Chapter 15 of the Bankruptcy Code, to prevent the significant and irreversible harm to Hector DAO that would be caused by the continuation or commencement of the Hector DAO Claims against the Protected Parties outside the Chapter 15 Case.

**J.      The Retainer.**

62.    Prior to filing the Verified Petition, I caused a retainer in the amount of ten thousand U.S. dollars ($10,000.00) of the Debtor's assets to be wire transferred to an account in the name of Genova Burns LLC in the state of New Jersey.  Genova Burns LLC holds such funds as a security retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  June 16, 2024      By: _____

*James Drury, as Joint and Several Receiver of Hector DAO*