| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Gerard T. Cicero, Esq.<br>dmolton@brownrudnick.com<br>gcicero@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Stephen D. Palley, Esq. (*pro hac vice* pending)<br>spalley@brownrudnick.com<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005<br>Tel: (202) 536-1766<br>Fax: (617) 289-0766<br><br>and<br><br>Michael W. Reining, Esq. (*pro hac vice* pending)<br>mreining@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Counsel for James Drury and Paul Pretlove, as the Appointed Receivers of Hector DAO* | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 230-2095<br><br><br>*Local Counsel for James Drury and Paul Pretlove, as the Appointed Receivers of Hector DAO* |
| In re:<br><br>HECTOR DAO,<br><br>                    Debtor. | Chapter 15<br>Case No. 24-16067 |

### DECLARATION OF CHRISTOPHER PEASE IN SUPPORT OF (I) VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF

I, Christopher Pease, declare as follows:

1.      I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion"). I am a partner of

Harney Westwood & Riegels, who serve as counsel to the Receivers in connection with the BVI Receivership Proceeding, each as defined below.[1]

2. In 2006, I earned a Bachelor's degree in Jurisprudence from the University of Oxford. In 2007, I completed the Legal Practice Course (LPC) at the College of Law. In 2009, I gained admission to practice as a Solicitor in England and Wales, and thereafter practiced as a solicitor in London until 2017 – during which time I completed the Higher Rights of Advocacy (Civil) course at BPP University Law School in 2016. In 2017, I gained admission to practice as a solicitor-advocate in the British Virgin Islands ("BVI") and have been practicing in the BVI continuously since that time.

3. I am a partner and co-head of the BVI Litigation, Insolvency, and Restructuring group at Harney Westwood & Riegels (or "Harneys"), where I have experience in all of the types of disputes that frequently arise in the BVI including fraud and bribery claims, enforcement and asset recovery, disputes relating to the ownership and management of companies, minority shareholder claims, and insolvency and restructuring cases. In recent years I have advised on numerous digital asset disputes, actions to recover cryptocurrency, and liquidations of VASPs. I have particular expertise in fraud and asset recovery cases, specifically with respect to applications for interim relief involving injunctive relief and third-party disclosure orders. I also frequently advise on cases where court-appointed officers (e.g. liquidators and receivers) seek to bring actions to recover assets that have been misappropriated by former management.

4. Based on the foregoing, I am familiar with BVI law and with disputes and court-processes relating to digital assets and decentralized finance.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to such terms in the *Declaration of James Drury in Support of (i) Verified Petition for Recognition of Foreign Proceeding and (ii) Motion in Support of Verified Petition for Recognition of Foreign Proceeding and for Related Relief*, filed contemporaneously herewith.

5. The British Virgin Islands is a British Overseas Territory (i.e., part of the sovereign territory of the United Kingdom). The BVI's judicial system is modeled on the United Kingdom's judicial system. The BVI is a member state of the Eastern Caribbean Supreme Court, whose final court of appeals is the Judicial Committee of the Privy Council in London. The BVI is a common law jurisdiction. Although BVI law differs from English law in some regards given that it has its own body of legislation, much of the legislation and applicable case law is derived from English law and English law and procedure may sometimes apply in the absence of local provisions.

6. On February 16, 2024, Hector Enterprise Inc. (Hector DAO's intermediary for off-chain transactions), with the cooperation of members of the liquidation committee that was formed following the vote to liquidate, filed an application with the High Court of the Virgin Islands (Commercial Division), Eastern Caribbean Supreme Court (the "BVI Court") to appoint James Drury and Paul Prelove of Interpath (BVI) Limited (the "Receivers") as joint and several receivers over the assets and undertakings of Hector DAO, thus initiating Case Number BVIHCOM 2024/0072 (the "BVI Receivership Proceeding").

7. On February 19, 2024, the BVI Court made an order appointing the Receivers as joint and several interim receivers over the assets of Hector DAO, including the Treasury Assets, for the purpose of collecting and preserving such assets as part of the wind-down of Hector DAO (the "Interim Receivership Order"). The Interim Receivership Order was made on an ex parte basis and therefore required a return date within 28 days.

8. On March 12, 2024, the BVI Court made an order (the "Continuation Order") continuing the relief granted in the Interim Receivership Order and granting certain additional relief, including (i) permitting the Receivers to take legal advice on and pursue an application for

chapter 15 recognition under the United States Bankruptcy Code, and (ii) permitting the Receivers to formulate a detailed plan for the distribution of the Treasury Assets to HEC Tokenholders.

9. On April 9, 2024, the BVI Court made an order (the "Final Receivership Order")[2] appointing the Receivers as joint and several receivers, on a full and final basis, over the Treasury Assets, with immediate effect, for the purpose of collecting in and preserving such assets, winding down the operations of Hector DAO and distributing the Treasury Assets, firstly to admitted creditors and then amongst the HEC Tokenholders who are eligible for a redemption in proportion with their token holding, as part of a collective liquidation process. *See* Final Receivership Order at 2, 4-5. Pursuant to the Final Receivership Order the Receivers were granted additional powers for the purpose of planning and giving effect to a distribution of Treasury Assets amongst eligible HEC Tokenholders, rather than the preservatory role that the Receivers held in accordance with their interim appointment. *See id*. at 7.

10. As the court-appointed receivers in the BVI Receivership Proceeding, the Receivers have control over the Treasury Assets and the management of Hector DAO pursuant to the Final Receivership Order. *See* Final Receivership Order at 3-5.

11. The BVI Court specifically authorized the Receivers, as court officers and licensed insolvency practitioners, to exercise their powers both in the British Virgin Islands and abroad. *See* Final Receivership Order at 4-5.

12. The Final Receivership Order also authorized the Receivers to, among other things, take and retain possession and/or control of the Treasury Wallet, take and retain possession of all documents, information, books and records relating to Hector DAO, investigate antecedent

---

[2] A true and correct copy of the April 10, 2024 Final Receivership Order is attached as Exhibit A to the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* ("Evidence of the Foreign Proceeding").

transactions effecting Hector DAO, exercise any rights exercisable by Hector DAO, enter into any transaction on behalf of Hector DAO, bring and defend actions in order to recognize the BVI Receivership Proceeding and the Receivers' powers or to otherwise prevent interference with the receivership process, and do other acts that are in the Receivers' discretion necessary for carrying out and giving effect to their appointment. *See* Final Receivership Order at 3-5.

13. The Final Receivership Order provides that the Receivers shall formulate, prepare, and submit to the BVI Court a plan for the distribution of the Treasury Assets to eligible HEC Tokenholders, which shall be subject to the BVI Court's approval before any final distribution is made. *See* Final Receivership Order at 7. The Final Receivership Order requires that this plan for distribution must, among other things, consider the rights and obligations of all HEC Tokenholders and provide for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders. *See id*.

14. As the receivers appointed by the BVI Court and who have the power "to do all such acts or things as [they] may in their discretion consider necessary for carrying out and giving effect to their appointment", the Receivers have the authority to take the actions necessary to distribute the Treasury Assets and wind down Hector DAO "as part of a collective liquidation process." *See* Final Receivership Order at 2, 5.

15. The BVI Court oversees the BVI Receivership Proceeding. *See* Final Receivership Order at 1, 6-7. As court-appointed officers, and regulated professionals, the Receivers owe duties to and are answerable to the BVI Court. The Receivers are required to report to the BVI Court at least every three months to update the BVI Court on the status of the receivership. *See id*.

16. In addition to the Receivers' responsibilities with respect to formulating a plan for distribution of the Treasury Assets to eligible HEC Tokenholders, discussed above, the Receivers

are also responsible for administering claims by creditors in the BVI Receivership Proceeding. *See* Final Receivership Order at 4-5.

17.　Although the BVI Court has appointed the Receivers as receivers rather than as liquidators, the Final Receivership Order is explicit that the purpose of the appointment of the Receivers is to distribute Treasury Assets (i.e. the assets held on behalf of Hector DAO) amongst HEC Tokenholders as part of a collective liquidation process. *See* Final Receivership Order at 1. The Final Receivership Order further specifies that the plan for distribution must provide for *pari passu* treatment of all eligible HEC Tokenholders. *See id*. at 7. Further, the Receivers have the power "to adjudicate claims by creditors of Hector DAO and to use Treasury Assets to make payment of any claims admitted by the Receivers in full and, if necessary, in priority to the distribution of the remaining Treasury Assets amongst eligible HEC Tokenholders, provided that any such creditors shall have the right to apply to Court to challenge the Receivers' adjudication or otherwise seek directions from the Court in relation to the adjudication." S*ee id*. at 4-5. The effect of these requirements is to ensure that the receivership proceeds as, or similar to, a liquidation, even if it is not a liquidation in name.

18.　It is a general principle under BVI law that valid pre-existing secured rights are recognized in a liquidation scenario and that secured creditors (i.e., creditors with a "charge" on assets) will therefore have priority over unsecured creditors with respect to their collateral. Under BVI insolvency laws, secured creditors would have priority over unsecured creditors with respect to encumbered assets, with any surplus being realized for the benefit of the general estate. In a liquidation scenario under BVI law, unsecured creditors are typically paid *pari passu*.

19.　To the extent Hector DAO has U.S. creditors, they would be treated fairly in the BVI Receivership Proceeding and its liquidation of Hector DAO. No distinction would be drawn

for the purpose of Hector DAO's liquidation based on the nationality or residence of the creditor. For example, BVI creditors would not receive any priority simply because they are residents of the BVI. Equally, U.S. creditors would not be treated less favorably than creditors from any other jurisdiction. Thus, there would be no different treatment of U.S. and BVI creditors based on their residency or nationality. The Receivers would however seek to ensure that any payment made, whether to a creditor or HEC Tokenholders, is in a form and manner that would not be contrary to any laws of the place where the recipient creditor or HEC Tokenholder is based.

20. For the avoidance of doubt, although HEC Tokenholders are not creditors of Hector DAO and the distribution to them is effectively subordinate to the payment of any creditor claims admitted by the Receivers, all HEC Tokenholders eligible to have their tokens redeemed and receive corresponding distributions will be treated equally on a per-eligible-token basis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: June 17, 2024    By: _____
*Christopher Pease*