| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>Caption in Compliance with D.N.J. LBR 9004-1(b) | |
|---|---|
| **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Gerard T. Cicero, Esq.<br>dmolton@brownrudnick.com<br>gcicero@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Stephen D. Palley, Esq. (*pro hac vice* pending)<br>spalley@brownrudnick.com<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005<br>Tel: (202) 536-1766<br>Fax: (617) 289-0766<br><br>and<br><br>Michael W. Reining, Esq. (*pro hac vice* pending)<br>mreining@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Counsel for James Drury and Paul Pretlove, as the Appointed Receivers of Hector DAO* | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 230-2095<br><br>*Local Counsel for James Drury and Paul Pretlove, as the Appointed Receivers of Hector DAO* |
| In re:<br><br>HECTOR DAO,<br>            Debtor. | Chapter 15<br>Case No. 24-16067 (MBK)<br><br>Hearing Date:  July 15, 2024 at 1:00 p.m. Eastern<br>Objection Deadline:  July 8, 2024 at 4:00 p.m. Eastern |

## MOTION IN SUPPORT OF VERIFIED PETITION FOR
## RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF

James Drury and Paul Pretlove, in their capacity as the appointed receivers (the "Petitioners" or "Receivers") of Hector DAO, the above-captioned debtor, with respect to a receivership proceeding (the "BVI Receivership Proceeding") ongoing before the High Court of the Virgin Islands (Commercial Division), Eastern Caribbean Supreme Court (the "BVI Court"), by and through their U.S. counsel, Brown Rudnick LLP, respectfully submit this *Motion in Support*

*of Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "<u>Motion</u>", and together with the *Verified Petition for Recognition of Foreign Proceeding*,[1] the "<u>Verified Petition</u>") seeking, among other things, entry of the proposed order attached as <u>Exhibit A</u> (the "<u>Proposed Order</u>") (i) recognizing the BVI Receivership Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the Bankruptcy Code, (ii) recognizing the Petitioners as Hector DAO's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code, (iii) granting relief – pursuant to section 1521(a) of the Bankruptcy Code – prohibiting the continuation or commencement of litigation in the United States impacting Hector DAO and its assets, including litigation against certain identified third parties, (iv) granting the Petitioners authority – pursuant to section 1521(a) of the Bankruptcy Code – to examine witnesses, take evidence, and deliver information concerning Hector DAO's assets, affairs, rights, obligations, and liabilities, and (v) granting such other and further relief as the Court deems just and proper.

In support of the Verified Petition, the Petitioners rely on (1) the *Declaration of James Drury in Support of (i) Verified Petition for Recognition of Foreign Proceeding and (ii) Motion in Support of Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "<u>Drury Declaration</u>"), and (2) the *Declaration of Christopher Pease in Support of (i) Verified Petition for Recognition of Foreign Proceeding and (ii) Motion in Support of Verified Petition for Recognition of Foreign Proceeding and for Related Relief* (the "<u>Pease Declaration</u>"), each filed concurrently herewith and incorporated as if fully set forth herein.  In addition, the Petitioners respectfully represent as follows.

---

[1] The *Verified Petition for Recognition of Foreign Proceeding* includes the following attachments:  *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.*

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Petition pursuant to sections 157 and

1334 of title 28 of the United States Code and the Standing Order of Reference, dated September

18, 2012 (D.N.J. Sep. 18, 2012) (Simandle, C.J.).

2.      This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United

States Code.  *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . .

recognition of foreign proceedings and other matters under chapter 15 of title 11.").

3.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United

States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the

district court of the United States for the district . . . in which the debtor has its principal place of

business or principal assets in the United States."  28 U.S.C. § 1410(1).  Hector DAO's principal

assets in the United States, consisting of a retainer deposited with the Petitioners' local counsel,

are located within the District of New Jersey.  *See* Drury Declaration at ¶ 43.  Alternatively, if

Hector DAO did not have assets in the United States, then venue would be proper pursuant to

section 1410(2) of title 28 of the United States Code because an action is pending against Hector

DAO in the U.S. District Court for the District of New Jersey.  *See id*. at ¶ 34.

## FACTUAL BACKGROUND

4.      Contemporaneously with the filing of this Motion, the Petitioners filed the Verified

Petition for relief under chapter 15 of the Bankruptcy Code.

### A.      Hector DAO Generally.

5.      Formed in October 2021, Hector DAO was a group of crypto asset holders using

the Hector Network, a set of smart contracts deployed on the Fantom blockchain that were

programmed to facilitate financial transactions with crypto assets. *See* Drury Declaration at ¶ 5. The acronym "DAO" stands for "decentralized autonomous organization." *See id.*

6.      Hector DAO's blockchain-based governance system was created by deploying a DAO smart contract to govern the organization's voting mechanism. *See* Drury Declaration at ¶ 6. One could become a Hector DAO participant (or "HEC Tokenholder") by acquiring crypto asset tokens known as "HEC"[2] that were generated by Hector DAO and held by participants in their wallets to evidence their voting units. *See id.* HEC was acquired by transferring other types of crypto assets to the Hector DAO treasury wallet (the "Treasury Wallet", and the crypto assets held therein, the "Treasury Assets") in exchange for the issue of HEC. *See id.* Alternatively, one could acquire HEC from existing HEC Tokenholders on the secondary market. *See id.*

7.      HEC Tokenholders would submit proposals for Hector DAO activities – such as investing Treasury Assets, changing Hector Network's governing protocol, funding development projects, and organizing community events – and such proposals would be subject to voting periods and approval thresholds, with HEC Tokenholders casting their votes, weighed on a *pro rata* basis, to approve or reject proposals. *See* Drury Declaration at ¶ 7. Between November 2021 and May 2023, Hector DAO made millions of dollars' worth of investments of Treasury Assets in accordance with the votes of HEC Tokenholders, including investing in SAFTs (simple agreements for future tokens), marketing partnerships, tokens, and other crypto projects. *See id.*

8.      Hector DAO's project management team, an informal group that has changed over time, consists of individuals who provided services to Hector DAO and effectuated proposals approved by HEC Tokenholders. *See* Drury Declaration at ¶ 8. Beginning in early 2022, five

---

[2] Whilst HEC is the governance token, tokenholders could be a participant of Hector DAO by holding various derivatives or combinations of the HEC token, including but not limited to FNFT, HEC-TOR, sHEC, wHEC, and swHEC. Each has an aggregated value back to HEC which is used for voting.

individuals known as "Core 5" managed Hector DAO and the Hector Network. *See id*. Core 5 then invited select representatives from the wider development team to form the "Future Group," which provided input on management decisions. *See id*. The Future Group grew over time and turned into the "Steering Committee." *See id*. Core 5 in large part delegated its responsibilities to the Steering Committee. *See id*. The Steering Committee appointed and dismissed its members via Steering Committee votes. *See id*.

9.    On May 5, 2022, Core 5 formed Hector Enterprise Inc. for the purpose of serving Hector DAO as an intermediary for off-blockchain transactions, such as contracting with service providers, executing investment contracts, and onboarding with exchanges. *See* Drury Declaration at ¶ 9. All cost-incurring activities of Hector DAO were "routed" through Hector Enterprise Inc. *See id*. At all times since Hector Enterprise Inc.'s incorporation in the British Virgin Islands pursuant to the BVI Business Companies Act on May 5, 2022, its corporate director has been DLT Solutions Limited, 2nd Floor, Charles Court Building, 189 Main Street, Tortola, British Virgin Islands. *See id*.

**B.    Depletion of Treasury Assets and HEC Tokenholders' Vote to Liquidate.**

10.    In addition to the decline in value of certain of the investments described above, Hector DAO suffered losses to its Treasury Wallet resulting from:

   a.   the general decline in the value of cryptocurrency in 2022 and 2023;

   b.   internal software development costs including blockchain infrastructure projects and contractor remuneration; and

   c.   several one-off loss of value incidents caused by external factors, such as:

      i.   the collapse of Multichain;

      ii.   the hack of the Hector bridge; and

5

iii.  the collapse of UST (Terra Network) in May 2022, resulting in a

loss of $16.4 million in Treasury Assets.

*See* Drury Declaration at ¶ 10.

11.    In sum, the losses suffered by Hector DAO were caused by a combination of crypto market volatility, general vulnerability of certain smart contracts it invested in or interacted with to cyber hacks, and the challenges of investing in blockchain technology projects.  *See* Drury Declaration at ¶ 11.  The Receivers are also aware of allegations that Treasury Assets were mismanaged and that the former managers of the Treasury Assets may have been involved in the hacks, and the Receivers are investigating these matters.  *See id*.

12.    On July 15, 2023, the HEC Tokenholders were presented with proposal HIP 42 to either (a) liquidate the Hector Network and redeem the HEC token against the Treasury Assets or (b) migrate Hector Network and the HEC token to a different chain (to be determined) under a different brand.  *See* Drury Declaration at ¶ 12.  Voting under proposal HIP 42 ended on July 17, 2023, with HEC Tokenholders overwhelmingly (more than 83%) voting in favor of option (a), liquidation.  *See id*.

13.    Following the vote on proposal HIP 42, the Steering Committee appointed a liquidation committee to oversee and run the liquidation process (the "Liquidation Committee") and thereafter the Steering Committee ceased to exist.  *See* Drury Declaration at ¶ 13.  Certain members of the Liquidation Committee have indemnities included in their service agreement that provide that Hector DAO will indemnify such individuals against all costs, damages, claims, expenses and other liabilities that may be incurred by them: (i) in the reasonable conduct of the liquidation of Hector DAO; (ii) in the reasonable exercise of any function, authority, discretion or right vested in them under the liquidation plan; (iii) in enforcing the provisions of the services

agreement; or (iv) on the basis of any actions or inaction of Hector DAO or individuals involved

with Hector DAO prior to the individual contracting with Hector DAO. *See id.*  Hector DAO also

provided indemnities to certain contractors. *See id.*

**C.    Security Concerns and the Initiation of the Receivership.**

14.    Upon its appointment, the Liquidation Committee delegated responsibility for

developing a distribution smart contract and interfacing application ("User Interface") to distribute

the remaining Treasury Assets consistent with the vote on proposal HIP 42. *See* Drury Declaration

at ¶ 14.  Responsibility was delegated to the development team, with the assistance of outside

auditors to check and verify the security of the architecture, the smart contract, and the User

Interface.  Development and testing began in July 2023. *See id.*

15.    On January 15, 2024, when the Liquidation Committee attempted to distribute the

Treasury Assets by transferring treasury funds to the distribution smart contract for onward

distribution to HEC Tokenholders, the smart contract was immediately drained due to an

exploitation of a software vulnerability, resulting in the theft of assets worth $2.7 million. *See*

Drury Declaration at ¶ 15.

16.    Given the security concerns arising from the exploit of the distribution contract, the

Liquidation Committee was unable to distribute treasury funds directly to HEC Tokenholders and

accordingly sought to appoint receivers to perform this function. *See* Drury Declaration at ¶ 16.

17.    On February 16, 2024, Hector Enterprise Inc., with the cooperation of members of

the Liquidation Committee, filed an application with the BVI Court to appoint the Receivers as

joint and several receivers over the assets and undertakings of Hector DAO, thus initiating the BVI

Receivership Proceeding, Case Number BVIHCOM 2024/0072. *See* Drury Declaration at ¶ 17.

18.    On February 19, 2024, the BVI Court entered an order appointing the Receivers as

joint and several interim receivers over the assets of Hector DAO, including the Treasury Assets,

for the purpose of collecting and preserving such assets as part of the wind-down of Hector DAO

(the "Interim Receivership Order").  *See* Drury Declaration at ¶ 18.  The Interim Receivership

Order was made on an ex parte basis and therefore required a return date within 28 days.  *See id*.

Since the entry of the Interim Receivership Order, the Receivers have received correspondence for

Hector DAO at their office (Interpath (BVI) Limited, PO Box 4571, LM Business Centre, Fish

Lock Road, Road Town, Tortola, British Virgin Islands, VG1110).  *See id*.

19.    On March 12, 2024, the BVI Court entered an order (the "Continuation Order")

continuing the relief granted in the Interim Receivership Order and granting certain additional

relief, including (i) permitting the Receivers to take legal advice on and pursue an application for

chapter 15 recognition under the United States Bankruptcy Code, and (ii) permitting the Receivers

to formulate a detailed plan for the distribution of the Treasury Assets to HEC Tokenholders.  *See*

Drury Declaration at ¶ 19.

20.    On April 9, 2024, the BVI Court entered an order (the "Final Receivership Order")

appointing the Receivers as joint and several receivers, on a full and final basis, over the Treasury

Assets, with immediate effect, for the purpose of collecting in and preserving such assets, winding

down the operations of Hector DAO and distributing the Treasury Assets, firstly to admitted

creditors and then amongst the HEC Tokenholders who are eligible for a redemption in proportion

with their token holding, as part of a collective liquidation process.  *See* Final Receivership Order

at 2, 4-5; Drury Declaration at ¶ 20.  Pursuant to the Final Receivership Order the Receivers were

granted additional powers for the purpose of planning and giving effect to a distribution of

Treasury Assets amongst eligible HEC Tokenholders, rather than the preservatory role that the

8

Receivers held in accordance with their interim appointment.  *See* Final Receivership Order at 7;

Drury Declaration at ¶ 20.

21.      A true and correct copy of the Final Receivership Order is attached as <u>Exhibit A</u> to

the *Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the*

*Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure.  See* Drury

Declaration at ¶ 20 n.2.

**D.      The Receivers' Powers and Responsibilities.**

22.      As the court-appointed receivers in the BVI Receivership Proceeding, the

Receivers have control over the Treasury Assets and the management of Hector DAO pursuant to

the Final Receivership Order.  *See* Final Receivership Order at 3-5; Drury Declaration at ¶ 22;

Pease Declaration at ¶ 10.

23.      The BVI Court specifically authorized the Receivers, as court officers and licensed

insolvency practitioners, to exercise their powers both in the British Virgin Islands and abroad.

*See* Final Receivership Order at 4-5; Drury Declaration at ¶ 23; Pease Declaration at ¶ 11.

24.      The Final Receivership Order also authorized the Receivers to, among other things,

take and retain possession and/or control of the Treasury Wallet, take and retain possession of all

documents, information, books and records relating to Hector DAO, investigate antecedent

transactions effecting Hector DAO, exercise any rights exercisable by Hector DAO, enter into any

transaction on behalf of Hector DAO, bring and defend actions in order to recognize the BVI

Receivership Proceeding and the Receivers' powers or to otherwise prevent interference with the

receivership process, and do other acts that are in the Receivers' discretion necessary for carrying

out and giving effect to their appointment.  *See* Final Receivership Order at 3-5; Drury Declaration

at ¶ 24; Pease Declaration at ¶ 12.

9

25.      The Final Receivership Order provides that the Receivers shall formulate, prepare, and submit to the BVI Court a plan for the distribution of the Treasury Assets to eligible HEC Tokenholders, which shall be subject to the BVI Court's approval before any final distribution is made.  *See* Final Receivership Order at 7; Drury Declaration at ¶ 25; Pease Declaration at ¶ 13. The Final Receivership Order requires that this plan for distribution must, among other things, consider the rights and obligations of all HEC Tokenholders and provide for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders.  *See id.*

26.      As the receivers appointed by the BVI Court and who have the power "to do all such acts or things as [they] may in their discretion consider necessary for carrying out and giving effect to their appointment," the Receivers have the authority to take the actions necessary to distribute the Treasury Assets and wind down Hector DAO "as part of a collective liquidation process."  *See* Final Receivership Order at 2, 5; Drury Declaration at ¶ 26; Pease Declaration at ¶ 14.

27.      The BVI Court oversees the BVI Receivership Proceeding.  *See* Final Receivership Order at 1, 6-7; Drury Declaration at ¶ 27; Pease Declaration at ¶ 15. As court-appointed officers, and regulated professionals, the Receivers owe duties to and are answerable to the BVI Court. The Receivers are required to report to the BVI Court at least every three months to update the BVI Court on the status of the receivership.  *See* Final Receivership Order at 1, 6-7; Drury Declaration at ¶ 27; Pease Declaration at ¶ 15.  To date, the Receivers have complied with all of the BVI Court's requirements and have made best efforts to ensure the BVI Court is apprised of all pertinent matters.  *See* Drury Declaration at ¶ 27.

28.      In addition to their responsibilities with respect to formulating a plan for distribution of the Treasury Assets to eligible HEC Tokenholders, discussed above, the Receivers

are also responsible for administering claims by creditors in the BVI Receivership Proceeding. *See* Final Receivership Order at 4-5; Drury Declaration at ¶ 28; Pease Declaration at ¶ 16.

29.    Although the BVI Court has appointed the Receivers as receivers rather than as liquidators, the Final Receivership Order is explicit that the purpose of the appointment of the Receivers is to distribute Treasury Assets (i.e. the assets held on behalf of Hector DAO) amongst HEC Tokenholders as part of a collective liquidation process.  *See* Final Receivership Order at 1; Pease Declaration at ¶ 17.   The Final Receivership Order further specifies that the plan for distribution must provide for *pari passu* treatment of all eligible Tokenholders.   *See* Final Receivership Order at 7; Pease Declaration at ¶ 17.   Further, the Receivers have the power "to adjudicate claims by creditors of Hector DAO and to use Treasury Assets to make payment of any claims admitted by the Receivers in full and, if necessary, in priority to the distribution of the remaining Treasury Assets amongst eligible HEC Tokenholders, provided that any such creditors shall have the right to apply to Court to challenge the Receivers' adjudication or otherwise seek directions from the Court in relation to the adjudication."  *See* Final Receivership Order at 4-5; Pease Declaration at ¶ 17.   The effect of these requirements is to ensure that the receivership proceeds as, or similar to, a liquidation, even if it is not a liquidation in name.

**E.    The Receivers' Notices to Parties in Interest.**

30.    On February 23, 2024, the Receivers provided notice of the BVI Receivership Proceeding and the Receivers' appointment as joint and several interim receivers to (i) Sparring Legal, the former legal advisors to Hector DAO; (ii) Hector Enterprise Inc., through its director and Registered Agent, DLT Solutions Limited; and (iii) three of the four (former) multi signers of the Treasury Wallet (i.e., the group that had the ability to collectively authorize transactions

through the Treasury Wallet) – the BVI Court permitted the Receivers to dispense with serving the fourth multi signer.  *See* Drury Declaration at ¶ 29.

31.     Hector Enterprise Inc. is the only known creditor of Hector DAO.  *See* Drury Declaration at ¶ 30.  Neither the Receivers nor Hector Enterprise Inc. (Hector DAO's intermediary for off-blockchain transactions) are aware of any other creditors of Hector DAO.  *See id*.

32.     The Receivers also published notices to HEC Tokenholders through online sources and social channels.  *See* Drury Declaration at ¶ 31.  On February 19, 2024, the Receivers posted a notice of their interim appointment on Hector DAO's website and Telegram and Discord Channels.  *See id*.  On February 21, 2024, the Receivers posted a further communication on Hector DAO's Telegram and Discord channels.  *See id*.  On February 29, 2024, the Receivers collated a list of questions sent directly or observed through Discord and published a Frequently Asked Questions (FAQ) documents to the HEC Tokenholders to provide further details on the Receivers' role and their actions to date.  *See id*. The Receivers established a dedicated email address for HEC Tokenholders to correspond with them (Hector@interpathadvisory.com) and created a Telegram contact address (@InterpathBVI).  *See id*.  The Receivers have placed significant importance on engaging with the Hector DAO community by providing regular updates to provide clarity and establish trust within the community, as well as keeping the BVI Court updated with the progress of the receivership, having filed four reports.  *See id*.  By informing the community of the Receivers' interim appointment very shortly after it was made, this gave an opportunity to anyone affected by the appointment to engage with the proceedings.  *See id*.  Specifically, anyone opposed to the BVI Receivership Proceeding could have opposed the continuation of the interim appointment at the March 2024 hearing.  *See id*.  However, there has at no stage been any intervention in the BVI Receivership Proceeding by any HEC Tokenholders or third parties and

no objection to the appointment of the Receivers either on an interim or full and final basis.  *See id*.

33.    In sum, the Receivers have provided notice of the BVI Receivership Proceeding and the Receivers' appointment as joint and several receivers to all known creditors of Hector DAO and to the HEC Tokenholders.  *See* Drury Declaration at ¶ 32.

**F.    Initiation of the Newton Proceeding.**

34.    On February 7, 2024, Newton AC/DC Fund L.P. ("Newton"), an HEC Tokenholder, filed a complaint (the "Newton Complaint" and the proceeding the "Newton Proceeding") in U.S. District Court for the District of New Jersey, Trenton Division, Judge Robert Kirsch presiding (the "NJ District Court"), against Hector DAO, Farooq Hassan (a former member of the Liquidation Committee), and John Doe (an unknown person who holds an account at the Binance Exchange), alleging, among other things, that Hector DAO failed to fulfil its obligations to HEC Tokenholders and misapplied and/or wasted the Treasury Assets.[3]  *See* Drury Declaration at ¶ 33.  The Newton Complaint alleges breach of contract, unregistered offer and sale of securities under sections 5 and 12(a)(1) of the Securities Act of 1933, and breach of fiduciary duty against all named defendants, and conversion against all defendants.  *See id*.

35.    Along with the Newton Complaint, Newton filed a motion (the "TRO Motion") for (i) an *ex parte* temporary restraining order and (ii) order to show cause why a preliminary injunction should not issue to prohibit the transfer of and freeze the contents of the Treasury Wallet, as well as (iii) an order permitting Newton to serve defendants Hector DAO and John Doe

---

[3] *See* Verified Complaint, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 7, 2024) (Dkt. No. 1).

through alternative service.[4]  *See* Drury Declaration at ¶ 34.  On February 13, 2024, the NJ District Court denied the motion for a temporary restraining order on the papers but reserved decision on Newton's motions for an order to show cause and for alternative service, and scheduled a telephone conference for February 20, 2024.[5]  *See id.*

36.    On February 19, 2024, the Receivers' U.S. counsel, Brown Rudnick, emailed Newton's counsel and filed in the Newton Proceeding a letter (i) providing notice of the BVI Receivership Proceeding and the Receivers' broad powers to take possession and control of the very assets at issue in the Newton Proceeding and to secure those assets for the benefit of all of Hector DAO's claimants including Newton and (ii) advising that the BVI Receivership Proceeding makes Newton's request for injunctive relief entirely moot and the Newton Proceeding a distraction which should be dismissed.[6]  *See* Drury Declaration at ¶ 35.  On February 22, 2024, the Receivers' U.S. counsel, Brown Rudnick, filed in the Newton Proceeding a copy of the Interim Receivership Order, redacted to remove individuals' names to protect their safety and security, given that abuse and threats had been directed to members of the Liquidation Committee.[7]  *See id.*

37.    On February 20, 2024, the NJ District Court held a telephone conference on the order to show cause, with counsel for Newton and the Receivers participating.[8]  *See* Drury Declaration at ¶ 36.  The NJ District Court instructed Newton's counsel to advise the NJ District

---

[4] *See* Motion for Ex Parte Temporary Restraining Order and Order to Show Cause, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 7, 2024) (Dkt. No. 2).

[5] *See* Order [Denying Motion for Temporary Restraining Order], Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Feb. 13, 2024) (Dkt. No. 10).

[6] *See* Letter from David J. Molton, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 19, 2024) (Dkt. No. 11).

[7] *See* Letter from David J. Molton, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed Feb. 22, 2024) (Dkt. No. 14).

[8] *See* Text Order, Newton AC/DC Fund L.P. v. Hector DAO, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Feb. 20, 2024) (Dkt. No. 13).

Court on the status of the matter after conferring with the Receivers' counsel.[9] *See id.* At a follow-up conference on March 7, 2024, with counsel for Newton and the Receivers participating, Newton's counsel advised the NJ District Court that while it did not believe good cause existed to voluntarily dismiss the Newton Proceeding, it was no longer seeking preliminary injunctive relief.[10] *See id.* The NJ District Court referred Newton's request for an order permitting alternative service to Magistrate Judge J. Brendan Day.[11] *See id.*

38.     On April 24, 2024, Judge Day held a status conference and denied without prejudice Newton's motion to permit alternative service on defendants Hector DAO and John Doe, indicated that Newton may refile a motion for alternative service that shall include a supporting brief setting forth with specificity the relief Newton seeks and the applicable legal authority; granted Newton leave to subpoena Binance and/or other third parties for the limited purpose of seeking information related to John Doe in order to effectuate service; and extended Newton's time to effect service on all defendants to July 8, 2024.[12] *See* Drury Declaration at ¶ 37.

39.     On May 3, 2024, Newton filed a new motion to permit alternative service on Hector DAO and John Doe, arguing that Newton should be permitted to serve Hector DAO through Farooq Hassan and, additionally, serve both Hector DAO and John Doe through issuance of an

---

[9] *See* Text Order, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Mar. 7, 2024) (Dkt. No. 20).

[10] *See id.*

[11] *See id.*

[12] *See* Text Order, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered Apr. 25, 2024) (Dkt. No. 22).

NFT to certain wallet addresses identified by Newton.[13]   *See* Drury Declaration at ¶ 38.   The

motion will be decided on the papers by Judge Day.[14]   *See id*.

40.     The Newton Proceeding, which consists of litigation filed by a small number of

HEC Tokenholders, threatens to interfere with the BVI Receivership Proceeding which is a court-

driven collective process whereby regulated insolvency practitioners acting as independent

officers of the BVI Court are working to preserve and distribute the Treasury Assets to all eligible

HEC Tokenholders as part of a wind-down of Hector DAO.   *See* Drury Declaration at ¶ 39.   The

BVI Receivership Proceeding is clearly and distinctly the most appropriate proceeding to oversee

the liquidation and distribution of Hector DAO's assets amongst HEC Tokenholders, particularly

given that the Receivers are under a duty to fairly adjudicate creditor claims (with creditors having

the right to apply to the BVI Court if they are aggrieved by any decision taken by the Receivers)

and to provide for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders.   *See id*.

Granting the motion to recognize the BVI Receivership Proceeding as a "foreign main proceeding"

would stay, as against Hector DAO, the Newton Proceeding and any other actions in the United

States.

41.     The Newton Proceedings also names as a defendant Farooq Hassan, an individual

who formerly managed the Treasury Assets and administered the Hector DAO, and whose services

contract with Hector Enterprise Inc., the legal entity through which Hector DAO contracted off-

chain, provides that Hector DAO will indemnify him against all costs, damages, claims, expenses

and other liabilities that may be incurred by him: (i) in the reasonable conduct of the liquidation

---

[13] *See* Motion for Alternative Service, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. filed May 3, 2024) (Dkt. No. 25).

[14] *See* Text Order, <u>Newton AC/DC Fund L.P. v. Hector DAO</u>, Civil Action No. 24-722 (RK) (JBD) (D.N.J. entered May 6, 2024) (no Dkt. No.).

of Hector DAO; (ii) in the reasonable exercise of any function, authority, discretion or right vested in him under the liquidation plan; (iii) in enforcing the provisions of the services agreement; or (iv) on the basis of any actions or inaction of Hector DAO or individuals involved with Hector DAO prior to his contracting with Hector DAO.  *See* Drury Declaration at ¶ 40.  As such, the Receivers anticipate that claims against the Treasury Assets could arise from the Newton Proceeding pursuant to such indemnity, including as a result of the Newton Proceeding continuing (albeit the Receivers do not accept that a claim under such an indemnity has recourse to the Treasury Assets). *See id*.

42.    Since their appointment, the Receivers through their U.S. counsel, have made numerous efforts to encourage Newton to stay or dismiss the Newton Proceeding in deference to the BVI Receivership Proceeding.  *See* Drury Declaration at ¶ 41.  The Receivers have sought to assuage Newton's concerns by explaining the basis for and the purpose of the BVI Receivership Proceeding.  *See id*.  The remedies sought by Newton in the Newton Proceeding were initially predicated in part on assertions that the Treasury Assets were not secure and that there was a risk of dissipation.  *See id*.  This is no longer the case, and the Receivers have confirmed to Newton that the Receivers are both regulated insolvency practitioners who act as independent officers of the BVI Court and have full control of the Treasury Assets such that there is no risk of dissipation. *See id*.  Not only do the Receivers have full control of the Treasury Assets, but they have full control of the networks, servers, and all documents relating to Hector DAO which will ensure that a process for dealing with the Treasury Assets will be completed in an informed and efficient manner. *See id*.

43.    To date, the Receivers' efforts to obtain a consensual stay or dismissal of the Newton Proceeding has been unsuccessful, as Newton continues to request accommodations that

that are unacceptable to the Receivers.  *See* Drury Declaration at ¶ 42.  Continuation of the Newton

Proceedings will interfere with and delay the distribution of the Treasury Assets as there may be

future unquantified claims against the Treasury Assets.  *See id*.

**G.**     **Potential US Tokenholder Claims.**

44.     On 5 April 2024, a HEC Tokenholder based in the U.S. (the "US Tokenholder")

wrote to the Receivers directly raising concerns with respect to the former management team's

imposition of a rule, pursuant to HIP 42, whereby dealing with HEC tokens following the date on

which it was decided to make that community proposal (frequently referred to as the "Snapshot

Date") made such tokens ineligible for redemption.  *See* Drury Declaration at ¶ 43.

45.     Subsequently, through additional communication, the US Tokenholder reiterated

the above allegations against Hector DAO and the former management team.  *See* Drury

Declaration at ¶ 43.  In addition, the US Tokenholder also alleged that:

      a.   The HIP 42 voting process was invalid due to the requisite quorum not being

         met to validate the decision.  The US Tokenholder states that the lack of

         broad community participation undermines the legality of the HIP 42

         snapshot and, by extension, all decisions deriving from it.

      b.   The US Tokenholder claims to have uncovered concerning evidence

         suggesting that certain members of the Hector DAO team have engaged in

         activities warranting criminal investigations but has not provided that

         evidence.

*See id*.

46.     Further, the US Tokenholder placed the Receivers on notice that should the above

not be addressed, they will initiate legal proceedings in both the US and BVI.  *See* Drury

Declaration at ¶ 45.  In addition, the US Tokenholder has advised that information will be forwarded to the respective US tax authorities and the FBI for further action.  *See id*.  The US Tokenholder has also sought to write directly to the BVI Court to express their grievances.  *See id*.

47.    The Receivers have, in line with their position taken with all HEC Tokenholders, maintained open and transparent communication with the US Tokenholder.  *See* Drury Declaration at ¶ 46.  In respect of the US Tokenholder's purported allegations, the Receivers have requested the US Tokenholder provide documentation to support their claims to allow the Receivers to investigate further. To date no supporting documentation has been provided.  *See id*.  The US Tokenholder has attempted to give reasons for not being able to provide such documentation but the Receivers do not consider the explanation to be credible.  *See id*.  The Receivers have significant doubts as to the jurisdiction of the claims made by the US Tokenholder, based on on-chain data, and, therefore, have requested certain information, which is known to be easily accessible from centralized exchanges.  *See id*.

48.    The Receivers seek to prevent any claims or actions by the US Tokenholder in the United States from damaging Hector DAO or interfering with the BVI Receivership Proceeding. *See* Drury Declaration at ¶ 47.

**H.    Investigations.**

49.    The BVI Court granted the Receivers the power to investigate any such, and all antecedent transactions effecting Hector DAO, not limited to, the exploit and hack of the distribution smart contract on January 15, 2024 (the "January 2024 Hack").  *See* Drury Declaration at ¶ 48.

50.    The Receivers, whilst working with the community, have traced transactions from the January 2024 Hack to a number of centralized exchanges ("CEX") and decentralized protocols.

*See* Drury Declaration at ¶ 49.  Accordingly, the Receivers wrote to these platforms seeking information held relating to various wallet addresses associated with the January 2024 Hack.  *See id*.  A number of these platforms are based or have operations within the U.S., including Binance, BitPay and OKX (a Crypto exchange platform headquartered in Seychelles with offices located across the US), where the Receivers have seen wallets funded or be recipients of funds emanating from the January 2024 Hack.  *See id*.

51.    Whilst the Receivers are in contact with the CEXs, to date, the Receivers have received limited responses from the various platforms, who are only able to provide limited information, on a voluntary basis, without court order.  *See* Drury Declaration at ¶ 50.  The Receivers have also uncovered records owing to an individual with connections to the U.S., whom they strongly believe is the exploiter.  *See id*.

52.    The Receivers seek Chapter 15 recognition to assist in their investigations into the January 2024 Hack, specifically, with receiving the requested information from the platforms based within the U.S. by way of disclosure.  *See* Drury Declaration at ¶ 51.

**RELIEF REQUESTED**

53.    The Petitioners respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached as <u>Exhibit A</u>, after notice and a hearing, (i) recognizing the BVI Receivership Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the Bankruptcy Code, (ii) recognizing the Petitioners as Hector DAO's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code, (iii) granting relief – pursuant to section 1521(a) the Bankruptcy Code – prohibiting the continuation or commencement of litigation in the United States impacting Hector DAO, including litigation against certain identified third parties, (iv) granting the Petitioners authority – pursuant to section

20

1521(a) of the Bankruptcy Code – to examine witnesses, take evidence, and deliver information

concerning Hector DAO's assets, affairs, rights, obligations, and liabilities, and (v) granting such

other and further relief as the Court deems just and proper.[15]

## BASES FOR RELIEF

54.    Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks

assistance in a U.S. court.  *See* 11 U.S.C. § 1501(b)(1).  The stated objectives of chapter 15 include:

(i) cooperation between U.S. courts and foreign courts in cross-border insolvency cases, (ii) "legal

certainty for trade and investment," (iii) protection of all interested parties in a cross-border

insolvency, and (iv) "maximization of the value of the debtor's assets."  11 U.S.C. § 1501(a); *see*

In re Oversight & Control Comm'n. of Avánzit, S.A., 385 B.R. 525, 534 (Bankr. S.D.N.Y. 2008).

The Petitioners respectfully submit that each of these goals are best achieved by recognizing the

British Virgin Islands to be Hector DAO's center of main interests ("COMI"), and thus, that the

BVI Receivership Proceeding is a "foreign main proceeding."

55.    As part of the final recognition order, the Petitioners are also seeking relief

prohibiting the continuation and initiation of actions that threaten to interfere with the BVI

Receivership Proceeding and impair the Treasury Assets.

**A.    Recognition of the BVI Receivership Proceeding as a "Foreign Main Proceeding" and of the Petitioners as Hector DAO's "Foreign Representatives" is Appropriate.**

56.    Section 1517 of the Bankruptcy Code provides that, after notice and hearing, the

Court shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain)

proceeding if (i) such foreign proceeding is a foreign main (or nonmain) proceeding within the

---

[15] The Petitioners reserve their right to return to this Court to obtain recognition or enforcement of any orders entered by the BVI Court in the BVI Receivership Proceeding or to seek any other relief available to the Petitioners under chapter 15 of the Bankruptcy Code.

meaning of section 1502 of the Bankruptcy Code, (ii) the foreign representative applying for recognition is a person or body, and (iii) the petition meets the requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a); *see also* In re Overnight & Control Comm'n of Avanzit, S.A., 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).  As explained below, the BVI Receivership Proceeding, Hector DAO, and its Verified Petition satisfy all of the foregoing requirements.

### 1.    The BVI Receivership Proceeding is a "Foreign Proceeding."

57.    The BVI Receivership Proceeding is a "foreign main proceeding" and, as such, satisfies the first condition for entry of an order recognizing such proceeding under section 1517(a) of the Bankruptcy Code.  As an initial matter, the BVI Receivership Proceeding falls within the general definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

58.    Section 101(23) of the Bankruptcy Code requires that a "foreign proceeding" (i) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.[16]  *See id*.

59.    The BVI Receivership Proceeding is a "collective" judicial proceeding because the Final Receivership Order requires the Receivers to formulate – for approval by the BVI Court – a

---

[16] For purposes of chapter 15, a "debtor" means "an entity that is the subject of a foreign proceeding."  11 U.S.C. § 1502(1).

distribution plan that "consider[s] the rights and obligations of all HEC Tokenholders" and provides for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders as part of the "collective liquidation process." *See* Final Receivership Order at 2, 7; Pease Declaration at ¶ 13, 17; In re Betcorp Ltd., 400 B.R. 266, 281 (Bankr. D. Nev. 2009) (a proceeding is collective where such proceeding "considers the rights and obligations of all creditors" in contrast to a non-collective proceeding, such as a "receivership remedy instigated at the request, and for the benefit, of a single secured creditor"); In re Irish Bank Resol. Corp. Ltd., 538 B.R. 692, 698 (D. Del. 2015) (citing *id*.); *see also* In re Ernst & Young, Inc., 383 B.R. 773 (Bankr. D. Colo. 2008) (recognizing Canadian receivership proceeding as a foreign main proceeding).

60. The BVI Receivership Proceeding relates to adjustment of debt because the Receivers have the power to (a) distribute the Treasury Assets for the benefit of Hector DAO's creditors and HEC Tokenholders (subject to final approval from the BVI Court) and (b) do such acts that are in their discretion necessary to carry out their appointment, which entails administering claims by creditors and winding down the operations of Hector DAO as part of a collective liquidation process. *See* Final Receivership Order at 2, 4-5, 7; Drury Declaration at ¶¶ 25-28; Pease Declaration at ¶¶ 13-16.

61. A "foreign court" is defined as "a judicial or other authority competent to control or supervise a foreign proceeding." *See* 11 U.S.C. § 1502(3). The BVI Court is a judicial body of the British Virgin Islands, which has jurisdiction over the Petitioners and the receivership of Hector DAO's assets. Thus, the BVI Court is a "foreign court" with a supervisory role over the BVI Receivership Proceeding.

62. The BVI Receivership Proceeding is pending in a "foreign country" as it is not a U.S. proceeding.

63.     Based on the foregoing, the BVI Receivership Proceeding constitutes a "foreign proceeding" as defined in section 101(23), and as referred to in section 1517 of the Bankruptcy Code.

### 2.     The BVI Receivership Proceeding is a "Foreign Main Proceeding."

64.     The BVI Receivership Proceeding is a "foreign main proceeding" as defined by section 1502(4). A "foreign main proceeding" is "a foreign proceeding pending in a country where the debtor has the center of its main interests[.]" *See* 11 U.S.C. § 1502(4) (frequently abbreviated as "COMI"); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests.").

65.     The Bankruptcy Code does not define COMI, though "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). The section 1516(c) presumption "permits and encourages fast action in cases where speed may be essential." *See* In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd., 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) aff'd 389 B.R. 325 (S.D.N.Y. 2008). Here, Hector DAO acts exclusively through the court-appointed Receivers, who have their office in the British Virgin Islands and receive Hector DAO's correspondence at their address. *See* Drury Declaration at ¶¶ 18, 22. Therefore, the British Virgin Islands is presumed to be Hector DAO's COMI under section 1516(c) of the Bankruptcy Code.

66.     Where further inquiry beyond Bankruptcy Code section 1516's presumption is required, bankruptcy courts determine a debtor's COMI "based on its activities at or around the time the Chapter 15 is filed." Morning Mist Holdings Ltd v. Krys (In re Fairfield Sentry Ltd.),

714 F.3d 127, 137 (2d Cir. 2013).  The following factors may be probative of the determination of

a debtor's COMI (the "COMI Factors"):

> the location of the debtor's headquarters; the location of those who actually
> manage the debtor (which, conceivably could be the headquarters of a
> holding company); the location of the debtor's primary assets; the location
> of the majority of the debtor's creditors or of a majority of the creditors who
> would be affected by the case; and/or the jurisdiction whose law would
> apply to most disputes.

In re SPhinX, Ltd., 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), aff'd, 371 B.R. 10 (S.D.N.Y. 2007).

The COMI Factors are a nonexclusive list that "is a helpful guide, but consideration of these

specific factors is neither required nor dispositive" and mechanical application is disfavored.  *See*

Fairfield Sentry, 714 F.3d at 137.  In determining a debtor's COMI, importance should be placed

on criteria that are both objective and ascertainable to third parties.  *Id*. at 136-37.  Whether a third

party could objectively ascertain a debtor's COMI may be determined "by examining factors 'in

the public domain.'"  *Id*. at 137.

67.     In assessing these "factors in the public domain," a court will look at "activities at

or around the time the Chapter 15 petition is filed[.]"  *Id*.

68.     Moreover, "[t]o offset a debtor's ability to manipulate its [center of main interests],

a court may also look at the time period between the initiation of the foreign liquidation proceeding

and the filing of the Chapter 15 petition."  *Id*. at 133.

69.     A "court may consider the location of the debtor's 'nerve center,' including from

where the debtor's activities are directed and controlled, in determining a debtor's COMI."  In re

Suntech Power Holdings Co., Ltd., 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and

quotations omitted).

70.     Finally, a court also may consider "international sources of law . . . to underscore the importance of factors that indicate regularity and ascertainability." *Id*. (citation and quotations omitted).

71.     In this case, Hector DAO's COMI is incontrovertibly the British Virgin Islands. Despite its global nature and some connections to other countries arising from the locations of HEC Tokenholders, Hector DAO's operations and "nerve center" have been in the British Virgin Islands for at least two years.  Hector Enterprise Inc. (Hector DAO's intermediary for off-chain transactions), at all times since its incorporation in the British Virgin Islands pursuant to the BVI Business Companies Act on May 5, 2022, had its corporate director (DLT Solutions Limited) located in the British Virgin Islands.  *See* Drury Declaration at ¶ 9.  The Receivers are based in the British Virgin Islands.  *See id*. at ¶¶ 3, 18.  The BVI Court supervising the BVI Receivership Proceeding is in the British Virgin Islands.  *See id.* at ¶ 17.

72.     Although Hector DAO has some assets in the U.S. – namely, funds just recently deposited in a retainer account held by the Receivers' local counsel in New Jersey – and although HEC Tokenholders are believed to be located around the world, Hector DAO's COMI is in the British Virgin Islands, which is certainly "ascertainable by third parties."  *See* <u>Fairfield Sentry</u>, 714 F.3d at 130.

73.     Accordingly, pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code, the BVI Receivership Proceeding should be recognized as a "foreign main proceeding."

**3.      The Petitioner is a Qualifying Foreign Representative.**

74.     The second requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the putative foreign representative applying for recognition

must be a "person or body." *See* 11 U.S.C. § 1517(a)(2).  The term "foreign representative" is defined as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  "Person" is defined in section 101(41) to include "individuals."  *See* 11 U.S.C. §101(41).

75.     Here, the Petitioners are individuals, who have been duly appointed by the BVI Court to act as Receivers with the power to administer the liquidation of Hector DAO's assets pursuant to the Final Receivership Order. *See* Final Receivership Order at 2-5; Drury Declaration at ¶ 26; Pease Declaration at ¶ 14.

76.     Accordingly, the Petitioners satisfy sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

**4.     The Chapter 15 Petition Meets the Requirements of Section 1515.**

77.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).

78.     Section 1515 requires that,  (i) the foreign representative must file a petition for recognition, *see* 11 U.S.C. § 1515(a); (ii) the petition for recognition must be accompanied by either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing the foreign representative," (b) "a certificate from the foreign court affirming the existence of [the] foreign proceeding and of the appointment of the foreign representative," *or* (c) if such evidence is unavailable, "any other evidence acceptable to the court" demonstrating the existence of the foreign proceeding and "appointment of the foreign representative," *see* 11 U.S.C. § 1515(b)(1)-

(3); and (iii) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative[.]" *see* 11 U.S.C. § 1515(c).

79.     Here, this chapter 15 case was commenced by the Petitioners – foreign representatives – by filing the Verified Petition.  11 U.S.C. § 1515(a).  The Verified Petition is accompanied by a court-stamped copy of the Final Receivership Order, which demonstrates the commencement of the BVI Receivership Proceeding and the appointment of the Petitioners as Hector DAO's Receivers with the power to distribute Hector DAO's assets for the benefit of its creditors and the HEC Tokenholders.  *See* 11 U.S.C. § 1515(b)(2).  Further, the Petitioners submit that the Final Receivership Order constitutes "other evidence" of the BVI Receivership Proceeding and the appointment of the Petitioners as the Hector DAO's Receivers.  *See* 11 U.S.C. § 1515(b)(3).  Finally, the Petitioners have identified the BVI Receivership Proceeding as the only "foreign proceeding" with respect to Hector DAO.  *See* 11 U.S.C. § 1515(c).

80.     As set forth above, each of the prerequisites to recognition under section 1517 have been met.  Accordingly, the Petitioners respectfully requests that the Court recognize (i) the BVI Receivership Proceeding as a foreign main proceeding, and (ii) the Petitioners as Hector DAO's foreign representatives.

**B.     The Petitioners are Entitled to Relief Under Section 1520.**

81.     Upon recognition of the BVI Receivership Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the Petitioners, and respecting Hector DAO's property within the territorial jurisdiction of the United States.  Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by Petitioners to obtain such relief.

82.     For example, upon the recognition of a foreign proceeding as a "foreign main proceeding," a foreign representative is automatically entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code.  *See* 11 U.S.C. § 1520(a)(1) ("Upon recognition of a foreign proceeding that is a foreign main proceeding, (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States").

83.     Consequently, upon the recognition by this Court of the BVI Receivership Proceeding as a "foreign main proceeding," the ancillary recognition of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings against Hector DAO and its property in the U.S. is appropriate pursuant to section 1520(a) of the Bankruptcy Code.  As the protections set forth in section 1520(a) are granted automatically from the recognition of a "foreign main proceeding" under section 1517, if the Court recognizes the BVI Receivership Proceeding as a "foreign main proceeding," the Petitioners respectfully submit that no further showing is required.

**C.      Recognition of the BVI Receivership Proceeding is Not Manifestly Contrary to United States' Public Policy.**

84.     Recognition of a foreign proceeding is "subject to section 1506" of the Bankruptcy Code, which provides that a bankruptcy court may decline to grant relief requested if the action would be "manifestly contrary to the public policy of the United States."  11 U.S.C. §§ 1506, 1517(a).  The legislative history indicates that the "public policy" exception is narrow, applying only to the "most fundamental policies of the United States." H. Rep. No. 109-31, pt. 1, 109th Cong., 1st Sess. 109 (2005).  Furthermore, courts that addressed the "public policy" exception in section 1506 of the Bankruptcy Code note that the exception is narrow, its application restricted

29

to the most fundamental policies of the U.S., and a foreign judgment should generally be accorded comity if the foreign jurisdiction's proceedings meet fundamental standards of fairness. *See* Collins v. Oilsands Quest Inc., 484 B.R. 593, 597 (S.D.N.Y. 2012); *see also* In re Fairfield Sentry Ltd., 714 F.3d 127, 140 (2d Cir. 2013) (finding that "[t]here is no basis on which to hold that recognition of the BVI liquidation is manifestly contrary to U.S. public policy.").

85.      Section 1506 of the Bankruptcy Code does not apply here. Like a liquidation under U.S. law, a court-supervised liquidation under British Virgin Islands law is a collective process that recognizes the priority of pre-existing secured rights and provides for *pari passu* treatment of unsecured creditors. *See* Pease Declaration at ¶ 18. Moreover, the Final Receivership Order explicitly mandates that the plan for the distribution of Treasury Assets to HEC Tokenholders must, among other things, provide for *pari passu* and *pro rata* treatment of all eligible HEC Tokenholders. *See* Final Receivership Order at 7; Pease Declaration at ¶ 13, 17. British Virgin Islands creditors do not receive any priority simply because they are residents of the British Virgin Islands. *See* Pease Declaration at ¶ 19. Recognizing the BVI Receivership Proceeding as a "foreign main proceeding" would advance one of the express objectives of chapter 15; namely, the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" and the "protection and maximization of the value of the debtor's assets." *See* 11 U.S.C. § 1501(a).

**D.      Relief Under Section 1521 is Necessary and Appropriate.**

86.      To protect Hector DAO's assets and ensure the integrity of the BVI Receivership Proceeding's liquidation process, the Receivers request that the Court exercise its authority, under Bankruptcy Code section 1521(a), to (i) stay the commencement or continuation of actions against the Protected Parties on account of Hector DAO Claims (each as defined below) while the Chapter

30

15 Case is pending, and (ii) under section 105(a) of the Bankruptcy Code, enjoin the prosecution, outside of this Chapter 15 Case, of actions asserting Hector DAO Claims.

87.     Section 1521(a) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant ***any appropriate relief*** . . ." 11 U.S.C. § 1521(a) (emphasis added).  Such relief may include "staying the commencement or continuation of an individual action or proceeding ***concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a)***" and "***granting any additional relief that may be available to a trustee***, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)." 11 U.S.C. § 1521(a)(1), (7) (emphasis added). "Section 1521(a) outlines the discretionary relief a court may order upon recognition of a foreign proceeding, whether main or non-main . . . The discretion that is granted is 'exceedingly broad' since a court may grant 'any appropriate relief' that would ***further the purposes of chapter 15*** and ***protect the debtor's assets and the interests of creditors***." <u>In re Atlas Shipping A/S</u>, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009) (emphasis added).  Pursuant to section 1521(e), "[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief under paragraphs (1), (2), (3), and (6) of subsection (a)." 11 U.S.C. § 1521(e).

88.     The Receivers seek relief, pursuant to Bankruptcy Code section 1521(a), staying and prohibiting the commencement or continuation of any action seeking to hold any of the following parties (the "<u>Protected Parties</u>") liable for any Hector DAO Claims (as defined below): (a) any current or former HEC Tokenholders, including but not limited to any member or former member of Hector DAO's Liquidation Committee, Steering Committee, Core 5 group, or Future

31

Group and (b) any third parties whom Hector DAO has indemnified contractually.  As used herein,

the term "Hector DAO Claims" means any claims or causes of action relating in any way to HEC

tokens, the Treasury Wallet, the Treasury Assets, or the Hector Network that are asserted against

Hector DAO and/or the Protected Parties, were formerly asserted against Hector DAO and/or the

Protected Parties, or that could have been asserted against Hector DAO and/or the Protected

Parties, on any theory of liability, whether direct, derivative, joint and several, successor liability,

vicarious liability, fraudulent or voidable transfer or conveyance, alter ego, breach of fiduciary

duty, or otherwise.  The Receivers also seek relief under sections 1521(a) and 105(a) of the

Bankruptcy Code staying and enjoining the prosecution, outside of this Chapter 15 Case, of actions

asserting Hector DAO Claims.

### 1.    The Automatic Stay Prohibits the Prosecution of Hector DAO Claims Against the Protected Parties.

89.    While "the clear language of section 362(a) stays actions only against a 'debtor,'"

the Third Circuit has recognized that "courts have extended the automatic stay to nonbankrupt

codefendants in 'unusual circumstances,'" including "where there is such identity between the

debtor and the third-party defendant that the debtor may be said to be the real party defendant and

that a judgment against the third-party defendant will in effect be a judgment or finding against

the debtor" and "[c]ourts have also extended the stay to nondebtor third parties where stay

protection is essential to the debtor's efforts of reorganization."  McCartney v. Integra Nat. Bank

N., 106 F.3d 506, 509–10 (3d Cir. 1997) (quotations and citations omitted).  Here, not only is there

is an identity of interests between Hector DAO and the Protected Parties, but a stay is essential to

preserve the integrity of Hector DAO's liquidation proceeding and the Treasury Assets.  The

traditional four-factor standard for injunctions, discussed further below, also supports the

Receivers' request for a stay of the prosecution of Hector DAO Claims against the Protected Parties.

> **a.    There is an Identity of Interests Between the Debtor and the Protected Parties.**

90.    Here, the nondebtor Protected Parties and the Hector DAO share such an identity of interests that prosecution of the Hector DAO Claims would essentially be a suit against Hector DAO.

91.    Hector DAO has indemnified Newton Proceeding co-defendant Farooq Hassan and certain members of the Liquidation Committee, with the indemnities providing that Hector DAO will indemnify such individuals against all costs, damages, claims, expenses and other liabilities that may be incurred by them: (i) in the reasonable conduct of the liquidation of Hector DAO; (ii) in the reasonable exercise of any function, authority, discretion or right vested in them under the liquidation plan; (iii) in enforcing the provisions of the services agreement; or (iv) on the basis of any actions or inaction of Hector DAO or individuals involved with Hector DAO prior to the individual contracting with Hector DAO.  *See* Drury Declaration at ¶¶ 13, 40.  Hector DAO also provided indemnities to certain contractors.  *See id*. at ¶ 13.  Hector DAO's indemnification obligations give rise to an identity of interests with these parties because they may seek to hold Hector DAO responsible for their potential liabilities for Hector DAO Claims.  *See* A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (providing the example of "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case" as an "unusual circumstance" presenting a sufficient identity of interests between a debtor and a third party, and explaining that "[t]o refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute").

92.     Moreover, Hector DAO shares an identity of interests with the Protected Parties because ultimately Hector DAO's conduct and/or operations will be at the core of any Hector DAO Claims.  *See* In re W.R. Grace & Co., 386 B.R. 17, 30–31 (Bankr. D. Del. 2008) (finding an identity of interests between the nondebtor parties and the debtor where the debtors' operations and conduct were at the core of the issues raised against the nondebtor parties).

93.     Hector DAO and the Protected Parties may share an identity of interests even if the Protected Parties have independent liability for the Hector DAO Claims.  *See* In re Mallinckrodt Plc, No. AP 20-50850-JTD, 2021 WL 523625, at *6 (D. Del. Feb. 11, 2021) (holding that a court determination of the nondebtors' independent liability would not preclude the bankruptcy court from concluding that the claims against the debtors and nondebtors were "inextricably intertwined").  Furthermore, even if the Hector DAO Claims purport to prosecute only the Protected Parties' independent liability, the litigation would necessarily focus on the same facts, events, time periods, and alleged damages as claims against Hector DAO.

> **b.     Stay Protection is Necessary to Protect the Debtor's Liquidation Efforts.**

94.     The Receivers commenced the Chapter 15 Case to, among other things, preserve Hector DAO's assets in furtherance of their duties, as joint and several receivers, to liquidate Hector DAO's assets and repay its creditors through the BVI Receivership Proceeding.  Stay protection with respect to the Hector DAO Claims is necessary to avoid liquidation of those claims outside of this Chapter 15 Case and the BVI Receivership Proceeding and to avoid the potentially prejudicial impact of allowing litigation of the Hector DAO Claims to proceed with threat of impairment to the Treasury Assets.  If stay protection is not granted, the Receivers' efforts will necessarily be diverted away from the BVI Receivership Proceeding.

34

> **i.        Absent a Stay, Claims Against Hector DAO will be Liquidated Outside this Chapter 15 Case and the BVI Receivership Proceeding.**

95.     In the absence of a stay, continuation or commencement of the Hector DAO Claims will ultimately result in the liquidation of Hector DAO Claims against Protected Parties, and Hector DAO may ultimately be sought to be held liable for those claims.  Because Hector DAO has indemnified Protected Parties including Farooq Hassan, certain members of the Liquidation Committee, and certain contractors, the continued litigation of Hector DAO Claims against the Protected Parties outside the Chapter 15 Case would frustrate the purpose of the automatic stay. As a further consideration, absent a stay, judgments may be entered against Protected Parties, thus turning them into additional creditor claimants in the BVI Receivership Proceeding by virtue of actual or alleged indemnification obligations.

96.     In addition to indemnification issues, the continued litigation of the Hector DAO Claims against the Protected Parties would have additional adverse impacts on Hector DAO and its estate.  The prosecution of Hector DAO Claims against the Protected Parties would focus on the same facts, events, time periods, and alleged damages as claims against Hector DAO, thus necessarily impacting potential future claims against Hector DAO and prejudicing Hector DAO's rights with respect to such claims, as discussed below.

> **ii.       Absent a Stay, there is a Risk of Res Judicata, Collateral Estoppel, and Evidentiary Prejudice.**

97.     The continuation or commencement of Hector DAO Claims against the Protected Parties outside of this Chapter 15 Case may prejudice Hector DAO by creating the risk of res judicata, collateral estoppel, and/or evidentiary prejudice.

98.     Res judicata, also called claim preclusion, "prevent[s] parties from raising issues that could have been raised and decided in a prior action — even if they were not actually litigated."

Beasley v. Howard, 14 F.4th 226, 231 (3d Cir. 2021) (quotations and citation omitted).  In LTL, this Court found that it was "unnecessary . . . to explore in detail the potential preclusive effect of final judgment against the Protected Parties" because "it suffices to acknowledge that there *exists a risk* that the doctrine of res judicata could adversely impact Debtor in future litigation," and this Court further found that "[t]his risk weighs in favor of extending the stay under § 362(a)(1)." In re LTL MANAGEMENT, LLC, 638 B.R. 291, 316 (Bankr. D.N.J. 2022) (citing In re W.R. Grace & Co., 115 F. App'x 565 (3d Cir. 2004)).  Here, claimants may attempt to use the doctrine of res judicata to prevent Hector DAO from raising defenses to Hector DAO Claims that the Protected Parties did not raise, and there thus exists a risk that the doctrine of res judicata could adversely impact Hector DAO in future litigation.

99.    Collateral estoppel, also called issue preclusion, prevents the re-litigation of issues when the following four elements are satisfied: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action."  Howard Hess Dental Lab'ys Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 247–48 (3d Cir. 2010) (quotations and citation omitted).  While Hector DAO will likely not be a party to the litigation concerning Hector DAO Claims, claimants may nevertheless seek to apply the doctrine by attempting to invoke purported exceptions to the required elements.

100.    In addition to the risks posed by res judicata and collateral estoppel, as a practical matter the litigation of the Hector DAO Claims may generate testimonial and other evidence that claimants may seek to use in proceedings against Hector DAO in the future.  In LTL, this Court found that "[b]ecause the talc-related claims against the Debtor and the Protected Parties implicate the same product, the same time period, the same alleged defect and the same alleged harm, it is

possible that the evidentiary record developed in continued litigation against the Protected Parties could prejudice Debtor—especially considering that Debtor would be absent from the continued litigation." LTL MANAGEMENT, LLC, 638 B.R. at 317.  Given the risks posed to Hector DAO and its assets, absent a stay of the Hector DAO Claims against the Protected Parties, the Receivers will be required to divert significant resources to ensuring Hector DAO's interests are not prejudiced in those proceedings.  The risks facing the Debtor here are the same types of risk the Court considered in LTL, in which the Court determined that "the risk that litigation against the Protected Parties could result in adverse consequences for Debtor—such as record taint—weighs in favor of extending the automatic stay." *See id.*

### iii.   Absent a Stay, the Debtors' Resources Will be Diverted.

101.   Extending the stay under section 362 of the Bankruptcy Code is common in circumstances where the litigation sought to be stayed would divert the debtor's resources towards such litigation and away from other, more critical efforts.  *See* In re MCSi, Inc., 371 B.R. 270, 271–72 (S.D. Ohio 2004) (noting that courts interpreting the "unusual circumstances" test "have stayed actions against non-debtor co-defendants where they have found that the bankrupt estate would be adversely affected because the creditor's action would prevent the non-debtor from contributing funds to the reorganization, or would consume time and energy of the non-debtor that would otherwise be devoted to a reorganization effort.") (citing Gray v. Hirsch, 230 B.R. 239, 243 (S.D.N.Y.1999)).  In LTL, this Court found that "continued litigation against the Protected Parties would divert funds and resources toward defense costs" and cause other potential disruptions to the debtor's funds and resources.  LTL MANAGEMENT, LLC, 638 B.R. at 307.

102.   Absent a stay, the Hector DAO Claims will continue to be litigated outside of the Chapter 15 Case and the resources of the Debtor and the time and energy of the Receivers will be

diverted towards ensuring that Hector DAO's interests are not prejudiced in those proceedings, and away from the efforts to preserve and distribute Hector DAO's assets for the benefit of all creditors and HEC Tokenholders as part of a collective liquidation process.  As one example of the diversion of the Debtor's resources, funds that otherwise could contribute to the recoveries of creditors and HEC Tokenholders as part of the liquidation process will be diverted towards the Hector DAO Claims through the legal costs that Hector DAO will necessarily incur if the Hector DAO Claims are not stayed.

> **2.**    **The Court Should Exercise its Authority Under Sections 1521(a) and 105(a) to Stay and Enjoin the Continuation or Commencement of the Hector DAO Claims Against the Protected Parties.**

> > **a.**    **The Court has the Authority to Stay and Enjoin the Prosecution of the Hector DAO Claims Against the Protected Parties.**

103.    Bankruptcy courts have exercised their authority under section 1521 to issue injunctions in chapter 15 cases in order to prevent interference with the foreign proceeding.  *See* In re Olinda Star Ltd., 614 B.R. 28, 47–48 (Bankr. S.D.N.Y. 2020) (issuing permanent injunction against acts that would interfere with BVI scheme and sanction orders).  Additionally, section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105.  This section authorizes the Court to issue orders that will further the orderly and effective administration of the Chapter 15 Case and the preservation of Hector DAO's assets for the benefit of all creditors.

104.    Under section 105(a) of the Bankruptcy Code, the Court has the authority to enjoin creditors' actions against third parties, including by applying the protections of the automatic stay under section 362(a) of the Bankruptcy Code, to protect Hector DAO's assets and to ensure the orderly administration of this Chapter 15 Case.  *See* In re VistaCare Grp., LLC, 678 F.3d 218, 231

n.11 (3d Cir. 2012) ("Bankruptcy courts have broad powers (in addition to 11 U.S.C. § 362) to protect the property of the estate.  For example, under 11 U.S.C. § 105(a), a bankruptcy court may issue injunctive relief where parties are pursuing actions pending in other courts that threaten the integrity of a bankrupt's estate.") (quotations and citation omitted); LTL MANAGEMENT, LLC, 638 B.R. at 300 ("In this Court's view, ample authority exists to conclude that § 362(a), § 105(a), or a court's inherent powers can each serve as independent bases for extension of a stay to nondebtor third parties.").  Here, enjoining the continuation or commencement of any Hector DAO Claims against the Protected Parties while the Chapter 15 Case is pending would be an appropriate exercise of the Court's authority.

### b.    The Traditional Test for Injunctions Supports Enjoining the Prosecution of Hector DAO Claims Against the Protected Parties.

105.    Courts in the Third Circuit look to the traditional four-factor standard for injunctions in determining whether to issue an injunction under section 105(a) of the Bankruptcy Code.  See In re Philadelphia Newspapers, LLC, 423 B.R. 98, 105 (E.D. Pa. 2010) ("The issuance of an injunction under section 105(a) is governed by the standards generally applicable to the issuance of injunctive relief in non-bankruptcy contexts.").  The traditional standard consists of the following four factors: "(1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest."  Id. at 106.

106.    As a threshold matter, the court looks to see if the first two factors are established before looking to see if the latter two factors are established.  In re Philadelphia Newspapers, LLC, 423 B.R. 98, 106 (E.D. Pa. 2010) ("the Court determines whether the first two threshold prongs are established, and if so, only then does it proceed to consider the third and fourth factors") (citing

Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly, 309 F.3d 144, 157 (3d Cir.2002)).  The Receivers have established the threshold factors because, as set forth below, (i) there is a substantial likelihood of success with respect to both achieving the purposes of the BVI Receivership and showing that the requested relief is warranted and necessary, and (ii) Hector DAO and the BVI Receivership Proceeding will incur irreparable damage if prosecution of the Hector DAO Claims is allowed to continue against the Protected Parties.  The remaining two factors are also met, as set forth below.

**i.    Hector DAO's Success is Likely.**

107.    The first factor – the likelihood of success – is satisfied because (i) there is a substantial likelihood that the BVI Receivership Proceeding will achieve its purposes of distributing Hector DAO's assets for the benefit of all creditors and HEC Tokenholders as part of a collective liquidation process, and (ii) there is a substantial likelihood that the Receivers will show that the requested relief staying and enjoining the continuation or commencement of the Hector DAO Claims against the Protected Parties is warranted and necessary.

108.    First, there is a substantial likelihood that the purposes of the BVI Receivership Proceeding will be achieved.  As the receivers appointed by the BVI Court and who have the power "to do all such acts or things as [they] may in their discretion consider necessary for carrying out and giving effect to their appointment", the Receivers have the authority to take the actions necessary to distribute the Treasury Assets and wind down Hector DAO "as part of a collective liquidation process."  See Final Receivership Order at 2, 5.  Moreover, the Receivers are regulated insolvency practitioners who act as independent officers of the BVI Court.  The Receivers have full control of the Treasury Assets such that there is no risk of dissipation, and they also have full control of the networks, servers, and all documents relating to Hector DAO which will ensure that

a process for dealing with the Treasury Assets will be completed in an informed and efficient manner.

109.    Second, there is a substantial likelihood that the Receivers will show that the requested relief is warranted and necessary.  Under section 1521(a) of the Bankruptcy Code, the Court has broad discretion to grant "any appropriate relief."  *See* 11 U.S.C. § 1521(a).  Relief prohibiting the commencement or continuation of any action seeking to hold any of the following the Protected Parties liable for any Hector DAO Claims is warranted for several reasons.  Not only is there is an identity of interests between Hector DAO and the Protected Parties, but a stay is essential to preserve the integrity of Hector DAO's liquidation proceeding.  Moreover, the traditional four-factor standard for injunctions supports the Receivers' requested relief.  Thus, the Receivers' likelihood of success on the merits is strong.

### ii.    If Litigation of the Hector DAO Claims is Not Enjoined, Hector DAO Would be Irreparably Harmed.

110.    The second factor – irreparable harm – is satisfied because Hector DAO and the BVI Receivership Proceeding will incur irreparable damage in the event of the continued litigation of the Hector DAO Claims against the Protected Parties.  A stay is necessary to further the purposes of this Chapter 15 Case, which include preserving Hector DAO's assets in furtherance of the Receivers' duties to liquidate Hector DAO's assets and repay its creditors according to their priorities.  Courts have found that debtors would be irreparably harmed by litigation that deprives the debtor of key personnel.  *See* In re Union Tr. Philadelphia, LLC, 460 B.R. 644, 660 (E.D. Pa. 2011).  In LTL, this Court found that "continued litigation will have an adverse impact on the bankruptcy estate, will hinder reorganization efforts, and will serve as a constant drain on resources and time," LTL MANAGEMENT, LLC, 638 B.R. at 320–21, and similar potential harms are at issue here.  Absent a stay, Hector DAO's assets will be threatened by: the liquidation of claims

outside the Chapter 15 Case for which Hector DAO may be sought to be held liable (whether directly or by actual or alleged indemnification obligations); the impact of litigation on Hector DAO's ability to negotiate resolutions with claimants; the risk of prejudice through res judicata, collateral estoppel, and evidentiary prejudice; and the drain on the resources of Hector DAO and the Receivers caused by monitoring the ongoing litigation and seeking to preserve Hector DAO's rights.  Litigation of the Hector DAO Claims against the Protected Parties presents an imminent and substantial risk of irreparable harm to Hector DAO and the BVI Receivership Proceeding.

> iii.   **The Irreparable Harm that Hector DAO Would Suffer Absent Relief Substantially Outweighs Any Prejudice to Claimants.**

111.    The third factor – the balance of harms – weighs in favor of enjoining the continuation or commencement of Hector DAO Claims against the Protected Parties.  Granting the requested relief would preserve Hector DAO's assets for the benefit of all creditors and HEC Tokenholders and allow the Receivers to focus their efforts on the collective liquidation process. Any delay experienced by claimants as a result of the requested relief would be substantially outweighed by the harm to Hector DAO, the Receivers, and the BVI Receivership Proceeding. *See* In re United Health Care Org., 210 B.R. 228, 234 (S.D.N.Y. 1997) (in the context of applying the third preliminary injunction factor, the court found that the creditor "will not suffer great financial hardship or unfair surprise should it be required to delay its collection action . . . for a brief period of time").  The requested relief would not materially harm any claimants here.  In contrast, as discussed above as part of the second factor, allowing claimants to continue litigating the Hector DAO Claims against the Protected Parties would impose hardships on Hector DAO, the Receivers, and the BVI Receivership Proceeding.

112.    Not only will the requested relief not materially harm any claimants here, but the vast majority of claimants will benefit from such relief.  Absent enjoining or staying the Hector

DAO Claims against the Protected Parties, judgments may be entered against the Protected Parties, thus turning them into additional creditor claimants in the BVI Receivership Proceeding by virtue of actual or alleged indemnification obligations.

**iv.    Granting the Requested Relief Will Further the Public Interest.**

113.    The fourth factor – the public interest – supports issuance of the requested relief. The requested relief would further the public policies underlying the Bankruptcy Code, specifically the policies of affording the Debtor a breathing spell and treating all creditors equally.  *See* <u>Mar. Elec. Co. v. United Jersey Bank</u>, 959 F.2d 1194, 1204 (3d Cir. 1991), <u>reh'g granted and opinion vacated</u> (Jan. 10, 1992), <u>opinion reinstated on reh'g</u> (Mar. 24, 1992) (the purposes of the Bankruptcy Code's automatic stay include "giv[ing] a bankrupt a breathing spell from creditors by stopping all collection efforts, all harassment, and all foreclosure actions" and *"*protect[ing] creditors by preventing particular creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors.").  The requested relief is also in the public interest because it will facilitate the Receivers' efforts to preserve and distribute Hector DAO's assets for the benefit of all creditors and HEC Tokenholders as part of a collective liquidation process.  Furthermore, the requested relief is consistent with the public policies underlying chapter 15, including the objectives of (i) cooperation between "courts of the United States" and "the courts and other competent authorities of foreign countries involved in cross-border insolvency cases," (ii) the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor," and (iii) the "protection and maximization of the value of the debtor's assets." *See* 11 U.S.C. § 1501(a).

114.    Each of the four preliminary injunction factors is satisfied and the standard accordingly weighs in favor of staying and enjoining, pursuant to sections 1521(a) and 105(a) of

the Bankruptcy Code, the continuation or commencement of any Hector DAO Claims against the

Protected Parties.

**E.      Additional Relief Under Section 1521 is Necessary and Appropriate.**

115.    "[W]here necessary to effectuate the purpose of [chapter 15] and to protect the

assets of the debtor or the interests of the creditors, the court may, at the request of the foreign

representative, grant any appropriate relief . . ."  11 U.S.C. § 1521(a).  Such relief may include

"providing for the examination of witnesses, the taking of evidence or the delivery of information

concerning the debtor's assets, affairs, rights, obligations or liabilities."  11 U.S.C. § 1521(a)(4).

116.    The Petitioners' goal is to preserve and maximize the value of Hector DAO's assets

for the benefit of HEC Tokenholders and creditors.  This chapter 15 case was filed to help the

Petitioners to realize that goal.  Accordingly, the Petitioners respectfully request that they be

empowered to examine witnesses and take evidence or delivery of information concerning Hector

DAO's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the

Bankruptcy Code.

## NOTICE

117.    Pursuant to Bankruptcy Rule 2002(q)(1), notice of the hearing on the Verified

Petition will be provided to (i) Hector DAO; (ii) the Receivers; (iii) Newton AC/DC Fund L.P.;

(iv) Farooq Hassan; (v) the Office of the United States Trustee; and (vi) any other parties, or by

any other means, required by this Court.

118.    The Petitioners submits that no other or further notice need be provided.

## NO PRIOR REQUEST

119.    No previous request for the relief sought herein has been made to this or any other

Court.

## CONCLUSION

WHEREFORE, the Petitioners respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached as <u>Exhibit A</u>, after notice and a hearing, (i) recognizing the BVI Receivership Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the Bankruptcy Code, (ii) recognizing the Petitioners as Hector DAO's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code, , (iii) granting relief – pursuant to section 1521(a) of the Bankruptcy Code – prohibiting the continuation or commencement of litigation in the United States impacting Hector DAO and its assets, including litigation against certain identified third parties, (iv) granting the Petitioners authority – pursuant to section 1521(a) of the Bankruptcy Code – to examine witnesses, take evidence, and deliver information concerning Hector DAO's assets, affairs, rights, obligations, and liabilities, and (v) granting such other and further relief as the Court deems just and proper.

Respectfully Submitted:

Dated: June 17, 2024                          */s/ Daniel M. Stolz*
                                             _____

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
(973) 230-2095
dstolz@genovaburns.com
dclarke@genovaburns.com

*Local Counsel for James Drury and Paul Pretlove,
as the Appointed Receivers of Hector DAO*

**BROWN RUDNICK LLP**
David J. Molton, Esq.
Gerard T. Cicero, Esq.
Seven Times Square
New York, New York 10036

45

(212) 209-4800
dmolton@brownrudnick.com
gcicero@brownrudnick.com

and

Stephen D. Palley, Esq. (*pro hac vice* pending)
601 13th St. NW Suite 600
Washington, D.C. 20005
(202) 536-1766
spalley@brownrudnick.com

and

Michael W. Reining, Esq. (*pro hac vice* pending)
One Financial Center
Boston, MA 02111
(617) 856-8200
mreining@brownrudnick.com

*Counsel for James Drury and Paul Pretlove, as the*
*Appointed Receivers of Hector DAO*

## Exhibit A

**(Proposed Order)**

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY**<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | |
| **BROWN RUDNICK LLP**<br>David J. Molton, Esq.<br>Gerard T. Cicero, Esq.<br>dmolton@brownrudnick.com<br>gcicero@brownrudnick.com<br>Seven Times Square<br>New York, NY 10036<br>Tel: (212) 209-4800<br>Fax: (212) 209-4801<br><br>and<br><br>Stephen D. Palley, Esq. (*pro hac vice* pending)<br>spalley@brownrudnick.com<br>601 Thirteenth Street NW Suite 600<br>Washington, D.C. 20005<br>Tel: (202) 536-1766<br>Fax: (617) 289-0766<br><br>and<br><br>Michael W. Reining, Esq. (*pro hac vice* pending)<br>mreining@brownrudnick.com<br>One Financial Center<br>Boston, MA 02111<br>Tel: (617) 856-8200<br>Fax: (617) 856-8201<br><br>*Counsel for James Drury and Paul Pretlove, as the*<br>*Appointed Receivers of Hector DAO* | **GENOVA BURNS LLC**<br>Daniel M. Stolz, Esq.<br>Donald W. Clarke, Esq.<br>dstolz@genovaburns.com<br>dclarke@genovaburns.com<br>110 Allen Rd., Suite 304<br>Basking Ridge, NJ 07920<br>Tel: (973) 230-2095<br><br><br>*Local Counsel for James Drury and Paul Pretlove, as the*<br>*Appointed Receivers of Hector DAO* |
| In re:<br><br>HECTOR DAO,<br>                          Debtor. | Chapter 15<br>Case No. 24-16067 (MBK) |

## ORDER GRANTING VERIFIED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING UNDER CHAPTER 15 AND MOTION IN SUPPORT OF VERIFIED PETITION AND FOR RELATED RELIEF

Upon the *Verified Petition for Recognition of Foreign Proceeding Under Chapter 15* (the

"Verified Petition") and the *Motion in Support of the Verified Petition for Recognition of Foreign*

*Proceeding and for Related Relief* (the "Motion"),[17] filed by the Petitioners, who are the receivers

and duly-authorized foreign representatives for Hector DAO, and upon consideration of the Drury

---

[17] Capitalized terms not defined in this Order shall have the meanings ascribed to such terms in the Motion.

Declaration and the Pease Declaration; and the Court having determined that the relief sought in

the Verified Petition and the Motion is in the best interests of Hector DAO, its creditors, and all

parties in interest; and the Court having considered the evidence and statements regarding the

Verified Petition in the documents filed with the Court and at the hearing on the Verified Petition

and the Motion (the "<u>Hearing</u>"); and the Court having determined that the legal, evidentiary and

factual bases set forth in the documents filed with the Court establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY**

**FOUND AND DETERMINED THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact

and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), made applicable to these proceedings pursuant to Bankruptcy Rule 9014.

To the extent any of the following findings of fact constitute conclusions of law, they are adopted

as such.  To the extent any of the following conclusions of law constitute findings of fact, they are

adopted as such.

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing

Order of Reference, dated September 18, 2012 (D.N.J. Sep. 18, 2012) (Simandle, C.J.).   The

Verified Petition and the Motion constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).

Venue is proper in this District pursuant to 28 U.S.C. § 1410.

C.      This case was commenced properly pursuant to sections 1504, 1509, and 1515 of

the Bankruptcy Code.

D.      The Verified Petition and Motion satisfy the requirements of section 1515 of the

Bankruptcy Code.

E.      Notice of the Hearing was in compliance with Bankruptcy Rule 2002(q).

F.      The BVI Receivership Proceeding is a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G.      The BVI Receivership Proceeding is entitled to recognition by this Court pursuant to sections 1515 and 1517(a) of the Bankruptcy Code.

H.      Hector DAO's "center of main interests" is located in the British Virgin Islands and, therefore, the BVI Receivership Proceeding is entitled to recognition as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

I.      The Petitioners are "persons" as defined in section 101(41) of the Bankruptcy Code and the duly appointed "foreign representatives" of Hector DAO within the meaning of section 101(24) of the Bankruptcy Code.

J.      The relief granted herein is necessary to effectuate the purpose of chapter 15, and to protect Hector DAO, its assets, and the interests of its creditors and other parties in interest.

K.      The Petitioners are entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code.

L.      The relief granted herein (i) is necessary and appropriate in the interests of the public and international comity; (ii) is consistent with the public policy of the United States; (iii) is available and warranted pursuant to sections 1521(a), 1517, 1515, 1507(a), 1525(a), 105(a), and 362(a) of the Bankruptcy Code; and (iv) will not cause the Debtor's creditors or other parties in interest any hardship that is not outweighed by the benefits of granting the relief herein.

M.      For purposes of this Order, (i) the term "Hector DAO Claims" means any claims or causes of action relating in any way to HEC tokens, the Treasury Wallet, the Treasury Assets, or the Hector Network that are asserted against Hector DAO and/or the Protected Parties, were

50

formerly asserted against Hector DAO and/or the Protected Parties, or that could have been asserted against Hector DAO and/or the Protected Parties, on any theory of liability, whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or conveyance, alter ego, breach of fiduciary duty, or otherwise; and (ii) the term "Protected Parties" means (a) any current or former HEC Tokenholders, including but not limited to any member or former member of Hector DAO's Liquidation Committee, Steering Committee, Core 5 group, or Future Group, and (b) any third parties whom Hector DAO has indemnified contractually.

N.      Hector DAO Claims against Protected Parties asserting fraudulent transfer or voidable transfer or conveyance claims, or alter ego, successor liability, vicarious liability or other theories of recovery through which claimants would seek to assert Hector DAO Claims against a Protected Party constitute Hector DAO's property.  Section 362(a)(3) of the Bankruptcy Code applies to stay such actions while the Chapter 15 Case remains pending.

O.      Staying, pursuant section 1521(a) of the Bankruptcy Code, the Hector DAO Claims against the Protected Parties while the Chapter 15 Case remains pending is warranted.  Unusual circumstances exist justifying such a stay because (i) an identity of interests exists between the Debtor and each of the Protected Parties and (ii) continued litigation of the Hector DAO Claims outside of this Chapter 15 Case will have an adverse impact on the Debtor, the Receivers, and the BVI Receivership Proceeding.  Such a stay is also warranted under the four-prong test for the issuance of a preliminary injunction in the Third Circuit.

P.      Enjoining, pursuant to sections 1521(a) and 105(a) of the Bankruptcy Code, the continuation or commencement of any Hector DAO Claims against the Protected Parties while the

Chapter 15 Case is pending is warranted under the four-prong test for the issuance of a preliminary injunction in the Third Circuit.

Q.      Notice of the Hearing and the relief requested in the Verified Petition and the Motion at the Hearing was proper, adequate, sufficient, and comported with due process under the circumstances, and no other or future notice is or shall be required.

**NOW, THEREFORE**, it is hereby **ORDERED THAT**:

1.      The Verified Petition and the Motion are GRANTED as set forth herein.

2.      All objections and reservations of rights, if any, relating to the Verified Petition and the Motion that have not been withdrawn, waived, or otherwise resolved are overruled and denied.

3.      The BVI Receivership Proceeding is recognized as a "foreign main proceeding" pursuant to section 1517(b)(1) of the Bankruptcy Code.

4.      The Petitioners are recognized as the "foreign representatives" (as defined in section 101(24) of the Bankruptcy Code) of Hector DAO.

5.      Pursuant to section 1520(a) of the Bankruptcy Code, the automatic stay under section 362 of the Bankruptcy Code applies with respect to Hector DAO and the property of Hector DAO that is within the territorial jurisdiction of the United States.

6.      Pursuant to section 1521(a) and 105(a) of the Bankruptcy Code, all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to this Court's jurisdiction, other than the Petitioners and their expressly authorized representatives and agents, are stayed and enjoined from commencing or continuing to prosecute any Hector DAO Claim against any of the Protected Parties, on any theory of liability, whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or conveyance, alter ego or otherwise, while the Chapter 15 Case is pending.  Without limitation, the activities prohibited by the foregoing

include: (i) the pursuit of discovery from the Protected Parties or their officers, directors,
employees or agents with respect to Hector DAO Claims; (ii) motions practice related to the
foregoing; and (iii) collection activity on account of a Hector DAO Claim against any Protected
Party or its officers, directors, employees or agents or its respective assets.

7.    The Petitioners are entitled to conduct discovery, examine witnesses, seek and take
evidence, and obtain information concerning Hector DAO's assets, affairs, rights, obligations, or
liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

8.    The Petitioners are authorized to take all actions necessary to effectuate the relief
granted by this Order without notice or further order of the Court.

9.    This Court retains jurisdiction with respect to any matters, claims, rights, or
disputes arising from or related to this Order, its implementation, or otherwise arising from or
related to this chapter 15 case.

10.    This Order shall be effective and enforceable immediately upon its entry.

Dated:    _____, 2024
        Trenton, New Jersey

                                    _____
                                    United States Bankruptcy Judge